WILLIAM M. BUSEY, Ex'r of JAMES McCURLEY, JR., *vs.* SUSANNAH S. McCURLEY. FELIX McCURLEY AND HENRY STOCKBRIDGE, Adm'rs d. b. n. c. t. a. of JAMES McCURLEY, and others *vs.* SUSANNAH S. McCURLEY.

*Ante-nuptial Settlement—Renunciation of Bequest—Specific performance—Money equivalent instead of Specific execution.*

By an ante-nuptial settlement it was covenanted that the intended wife, if she survived the husband, should receive at his death one dwelling-house, to be vested in her absolutely, in lieu of dower, or distributive share in his estate. The husband, having become estranged from the wife shortly before his death, left her in his will a dwelling-house of comparatively small value and subject to an annual ground rent of $64, which she renounced. He disposed of his entire estate by will, which he made during the period of alienation from his wife. On a bill by the widow asking for a specific execution of the covenant, and that she might have a dwelling-house suitable to her and her late husband's rank in life, and pecuniary circumstances, assigned to her, to be vested in her absolutely, or in lieu thereof a sum of money which the Court might deem adequate, it was HELD :

That the complainant had a right to renounce the bequest, and was entitled under the covenant to receive from her husband's estate a dwelling-house suitable to his pecuniary circumstances, and position in society; but as the specific execution of the covenant would be attended with no little difficulty, and as the relief prayed by the bill was in the alternative, she was entitled to receive a sum of money equivalent to the value of such house in lieu thereof.

APPEALS from the Circuit Court of Baltimore City.

These are appeals from a decree of the Court below requiring the administrators, &c., of James McCurley, deceased, to pay to the appellee the sum of six thousand

dollars as compensation, and in lieu of the dwelling-house which she was to have out of the estate of the said James McCurley, her late husband, by virtue of the covenants and considerations contained in their ante-nuptial marriage contract, proved in the cause ; and requiring the said appellee, upon payment being made, to execute a release to the said administrators, of all claim and demand upon the estate of their testator for the same. The case is stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

*Samuel Snowden,* and *Henry Stockbridge,* for the appellants.

The ante-nuptial contract made between the appellee and the testator was a contract between parties, both of whom were of sufficient age and capacity to comprehend its provisions. The legal effect of the contract was to bar the appellee from all claim to any interest in the estate of the testator, in case he died first, except "one dwelling-house," which she was to receive after his death ; and to exclude the testator from any claim to her property. Such a contract has mutuality, and everything requisite to give it validity ; and is legally binding upon both parties. *Naill, et al. vs. Maurer,* 25 *Md.,* 532.

Their intention must be ascertained from the language used by them in the contract, and the fair import of its terms, without reference to any hardship that may fall on the parties, and some distinct meaning must, if possible, be given to every word in the contract; and the intention as expressed, unless contravening some rule of law, will be carried into effect. *Slater vs. Magraw,* 12 *G. & J.,* 265; *Jones vs. Plater,* 2 *Gill,* 125 ; *Waters vs. Griffith,* 2 *Md.,* 326 ; *Abbott vs. Gatch,* 13 *Md.,* 314 ; *Williamson, et al. vs. Mayor, &c. of Baltimore,* 19 *Md.,* 413.

The recital in the contract sets forth the intention of the parties shortly to solemnize a marriage, and they have agreed that certain estate, &c., belonging to Mrs. Stauter, should be conveyed in trust, and that after coverture she might dispose of the same as if she were a *féme sole*. Then follows a grant by the parties conveying all the property of Mrs. Stauter to John A. McFadden upon certain trusts set forth in the contract; then follows the clause wherein, "in consideration of the foregoing," &c., it was "covenanted and agreed that she should have one dwelling-house in lieu of dower," and should resign, and she did resign "all right, title or claim to dower or distributive share in the estate of the said James McCurley."

Each party, by this agreement, clearly intended to release the property of the other from all claim and demand on their part, while they lived, and when either had died, except that she should have one dwelling-house from his estate if she survived him. And they evidently thought that they had accomplished this, their intention. There was no intention on the part of either that she should receive this dwelling-house during his life-time, but contingent upon her surviving, at his death, and from his estate.

The contract does not give her an interest in any of his property during his life, but only at his death. As the contract was to be performed only at or after his death, and out of his estate, there was only one way in which it could be carried out and performed, and that was by the last will and testament of James McCurley.

The right of the appellee, and the obligation of Mr. McCurley, are clearly declared in the contract. He is bound to provide for her, and she is entitled to receive, "from said McCurley's estate, one dwelling-house," and the selection of that house is vested in him.

As therefore it was the agreement that the testator should give her "one dwelling-house," to be held by her

absolutely, and as, at his death, he has given her what the contract demanded, she has no further claim against his estate.   The marriage was consummated as intended. Mr. McCurley never made any claim to any interest in her property, and by his will, she receives the final consideration for the contract, as stipulated therein.   The whole contract has thus been entirely fulfilled and performed by Mr. McCurley, and the appellee has, therefore, no claim upon his estate.   There is no hardship in the fact—if it be a fact—that the dwelling-house which he left her had less pecuniary value than some other house which he owned, for she knew at the time she made the contract that he might do so, and as she was a person *sui juris*, she must be held to be bound by the terms of the contract, and it is too late, after the death of the other party to the contract, for her to make any other claim against his estate.   *Reddington vs. Lanahan,* 59 *Md.,* 430.

The contract having been reduced to writing, and couched in plain and unambiguous language, must be treated as the exclusive medium of ascertaining the agreement by which the contracting parties bound themselves.   *Hutchins vs. Dixon, &c.,* 11 *Md.,* 30 ; *Bladen vs. Wells and Wife,* 30 *Md.,* 577 ; *Hough, Clendening & Co. vs. Pres. & Directors of Peoples' F. I. Co.,* 36 *Md.,* 398; *Dixon vs. Clayville,* 44 *Md.,* 578.

Parol testimony, therefore, is inadmissible to alter, vary, or contradict its terms.   The parol testimony was offered for the purpose of showing that at the time when the contract was made, it was also understood that the dwelling-house which the appellee was to receive from his estate was to be one afterwards to be built on Baltimore street.   This testimony would change the tenor of the contract by inserting in lieu of the language used by the parties to the contract the words "situated on West Baltimore street," thus varying the contract.

The written contract is indisputably such as the contracting parties intended it should be.   There is no omis-

sion to render it incomplete. It is such an one as the Statute of Frauds requires to be in writing, and testimony that would make it rest partly in parol, is clearly inadmissible. *Moale vs. Buchannan,* 11 *G. & J.,* 314; *Frank vs. Miller,* 38 *Md.,* 460; *Purcell vs. Miner,* 4 *Wall.,* 517; *Semmes vs. Worthington,* 38 *Md.,* 318.

It would also vary the terms of the original contract so that the Court would be required to enforce a contract with a parol variation.

*John H. Handy,* for the appellee.

What kind of house, therefore, does the mere contract itself imply? Of what value? Manifestly that the thing accepted in lieu must have some reasonable relation to the thing given up. Besides, the husband by this contract and selection became the trustee for his wife. *Story's Eq. Jur.,* sec. 1231; *Johnson vs. Johnson,* 40 *Md.,* 197.

If the contract be incomplete, evidence may be offered not to contradict or vary, but to ascertain and make certain the subject-matter of agreement, and to prove any collateral independent fact about which the agreement is silent. *Stockham vs. Stockham,* 32 *Md.,* 196; *Bladen vs. Wells,* 30 *Md.,* 577; *Paul vs. Owens,* 32 *Md.,* 408; *Basshor vs. Forbes,* 36 *Md.,* 166.

The intent must govern, and this must be ascertained by a reasonable interpretation of the contract, under the circumstances connected with it, explanatory of its meaning and purpose. *Abrams vs. Sheehan,* 40 *Md.,* 446; *Rayner vs. Wilson,* 43 *Md.,* 442; *Warner vs. Miltenberger's Lessee,* 21 *Md.,* 264.

It is competent to prove by parol a distinct subsequent agreement, waiving, abandoning or modifying the terms of the writing, or to prove an additional suppletory agreement by parol, by which something is supplied that is not in the written contract. *Andree vs. Bodman,* 13 *Md.,* 241; *Allen vs. Sowerby,* 37 *Md.,* 420; *Kribs vs. Jones & Son,*

44 *Md.*, 408; *Planters' Mutual Ins. Co. vs. DeFord*, 38 *Md.*, 402; *Fusting vs. Sullivane*, 41 *Md.*, 162; *Fryer vs. Patrick*, 42 *Md.*, 51; *Creamer vs. Stephenson*, 15 *Md.*, 212.

The appellee claims the right to a specific performance of the contract as determined by the parties themselves.

Here was a contract for a dwelling-house. If the contract is not so fatally void that it cannot be made certain, then no persons were more competent than the contracting parties to fill the omissions. The defendants claim that the husband alone had the right to designate and select the house; if that were so, it would certainly seem to follow that *both* of them together would have that right; certainly *both* were competent to do what *one* might do. There is no mode provided by the *contract* as to *how or when* the house is to be selected, or by whom. It might as well be selected in the joint life-time of the parties as after the husband's death. It was so selected and designated by both of them.

Whoever bought her husband's property after the record of the ante-nuptial contract, would have taken subject to the charge then created. But when they mutually agreed it should vest in and be measured by the property, 802 West Baltimore street, this general encumbrance was removed from the remainder of his property, and she at once had a vested interest in that property, contingent only on her surviving her husband.

This certainly must have been so as between the husband and his wife, and if binding on the husband, is binding on his devisees, and his donees under a voluntary conveyance.

It was *beneficial* to the husband to have the house designated and accepted by his wife, because it removed a cloud from the remainder of his estate, created by the *recorded ante-nuptial deed, which was notice to the whole world.* Hence there was this special consideration for the designation. If, then, the title had remained in him, the

442 MARYLAND REPORTS.

Busey, Ex'r *vs.* McCurley.   McCurley & Stockbridge *vs.* Same.

Court would have gratified all the conditions of the case by decreeing a specific performance, and requiring the West Baltimore street house to be conveyed to the appellee. But the deed of gift to Mrs. Reed has intervened, and the legal title was not in the testator when he died. Now we do not suppose a voluntary gift to his daughter can affect the appellee's rights. The voluntary devisee takes subject to all equities between the donor and others. *Story's Eq. Jur.*, sec. 1231; *Johnson vs. Johnson*, 40 *Md.*, 190; *Owens vs. Wheeler*, 1 *Md. Ch. Dec.*, 120; *O'Brien vs. Pentz*, 48 *Md.*, 562.

A contract to devise real estate, if shown to be in all respects fair, just and reasonable, founded on sufficient consideration, and there be no doubt in the proof as to any of its terms, may be enforced by specific performance as against heirs or devisees. *Semmes vs. Worthington*, 38 *Md.*, 298.

But this house has been bequeathed to Mrs. Andrews by her father's will, and the appellee does not desire to do her any injustice by diminishing her share of her father's estate. Hence she tenders herself ready and willing to take compensation in lieu of the house and lot, as it is from "*the estate*," and not Mrs. Andrews she is to receive the dwelling-house, and compensation seems to be the most equitable method of accomplishing justice and equity to all. What that compensation should be is the price of the thing she ought to have had in specie. That was the house and lot, the value of which is shown, by the average of the estimates of all the witnesses, to be $6,000 to $6,500, and has been so found by the Court.

ALVEY, C. J., delivered the opinion of the Court.

James McCurley, a widower with several children, and Susannah S. Stauter, a widow with one child, were married in the spring of the year 1867; and in contemplation of the marriage they entered into a marriage settlement,

dated the 28th of March, 1867. By this settlement, all the property belonging to Mrs. Stauter was secured to her separate use and control, and exclusive of all marital rights of her intended husband; and in consideration of the marriage, and of the full and complete surrender and relinquishment of all right and claim to dower in the real estate, and of distributive share of the personal estate, of the intended husband, the parties entered into the following stipulation, the one with the other:

" That the said Susannah S. Stauter shall, if she survive the said James McCurley, receive at his death, from said McCurley's estate, one dwelling-house, to be vested in her absolutely, in lieu of dower, * * *, and shall resign, and she doth now, by these presents, resign and acquit, all right, title or claim to dower, or distributive share, in the estate of said James McCurley, to which, as his widow, she would, without this, be otherwise by law entitled."

After the marriage and until within a period of less than two years prior to the death of the husband, which occurred in March, 1881, the parties lived happily together as man and wife; but unfortunate dissensions and alienation of feeling occurred, which resulted in a separation of the parties; and this was the state of things at the time of the death of Mr. McCurley. He left a considerable estate, amounting to about $100,000, composed principally of fee simple and leasehold property in the city of Baltimore. He disposed of his entire estate by will, which he made during the period of alienation from his wife. By his will he recognized his obligation under the covenant in the marriage settlement, and he attempted to discharge that obligation, by a bequest of a small leasehold dwelling-house and premises, on North Stricker street, to his wife. But this bequest the widow has renounced, as being in fraud of the covenant in the marriage settlement. And the bill in this case is for specific performance of the covenant, and the complainant charges that this bequest

to her was simply illusory, and was made with a studied design of depriving her of what was really intended originally she should have, and of putting her off with a provision wholly inadequate and inappropriate to her needs, and in fraud and disregard of her just rights under the deed of settlement. She charges that the house and premises bequeathed to her by the will, are of small value, in an objectionable location, and are subject to a considerable ground-rent; whereas the house really built for her, on West Baltimore street, and which was designed to come to her, in the event of her surviving her husband, in fulfilment of the requirement of the covenant, is of far greater value, less objectionable in location, and in every respect better suited to her condition and comfort, than the house on Stricker street; but which house thus designed for her, on West Baltimore street, the husband, shortly before his death, conveyed to his daughter, Mrs. Reed.

If the case stated in the bill be clearly made out by the proof, there certainly ought to be a remedy for the grievance suffered by the widow.

The terms of the covenant are exceedingly indefinite, and difficult to construe. It is plain enough that the complainant, in the event of surviving her husband, was entitled to receive a dwelling-house from his estate. But what sort of a dwelling-house,—of what size, style or value, or where located, or whether of fee simple or leasehold, or by whom to be selected, or whether it was to be purchased or built from the assets of the estate, or be confined to a selection from the dwelling-houses that the husband might leave as part of his estate,—are questions in regard to which the covenant is silent. The most that can be done, in regard to these matters, is to make inferences from the surrounding circumstances of the case, as to the real intention of the parties.

It is very clear, upon the terms of the covenant, that the complainant did not become entitled to the settlement

of any dwelling-house before the death of her husband, but only in the event that she should survive him. She acquired, therefore, no right or title to any particular dwelling-house before the death of her husband; and there is nothing in the terms of the covenant to justify the conclusion, either that the husband had the right to conclude the wife by his will, or that she had the right of selection after his death. And though the husband may have intended, or in fact built, a particular house, with a view to the fulfilment of the covenant with his wife, that did not bind him to set apart that particular house, and none other, for her use and benefit, under the covenant. Until his death, the wife had no right to claim a dwelling-house, and then only such dwelling-house as would reasonably answer the requirement of the covenant. The whole question, therefore, comes to this: What would be a reasonable compliance with the covenant, according to the events and circumstances of the case?

The proof shows that the husband and his family occupied a respectable position in society, though plain and unostentatious in their mode and style of living. It cannot be supposed that the husband, at the time of making the contract, intended his wife, in the event of her surviving him, to live in a mode and style less comfortable, or in appearance less respectable, than that in which he and his family had lived up to the time of his death. In conformity to this supposition, it is made clear upon the proof, that the house on West Baltimore street, in which he and his wife had lived for several years, was really designed for his wife in the event of her surviving him. The proof in the case, of his acts and repeated declarations upon the subject, make this clear beyond doubt. And but for the unfortunate estrangement that occurred, there can be but little reason to doubt that he would have designated that particular dwelling-house for his wife, instead of the one on Stricker street. But, as we have said,

he was not bound to set apart any particular dwelling-house, in anticipation of the event upon the occurrence of which alone the wife would become entitled.

That a Court of equity has jurisdiction, upon application for specific performance, to decree the assignment of a particular house, or the erection or purchase of a house, to gratify the requirement of the contract sought to be specifically performed, would seem to admit of no question or doubt. But in all such cases, the agreement must be sufficiently definite to guide the Court in the direction to be given for the specific performance, or, at any rate, that it may be made certain and definite upon proper inquiry. *Storer vs. Great Western Railway Co.*, 2 *Y. & Coll. Ch.*, 48, 53; *Wilson vs. Furness Railway Co.*, *L. Rep.*, 9 *Eq.*, 28; *Lytton vs. Great North. Railway Co.*, 2 *Kay & John.*, 394; *Hood vs. North-Eastern Railway Co.*, *L. R.*, 8 *Eq.*, 666, and same case, *L. R.*, 5 *Ch. App.*, 525; *Wilson vs. Northampton & Banbery Junc. Railway Co.*, *L. R.*, 9 *Ch. App.*, 279. In the last mentioned case, a railroad company agreed, for valuable consideration, with the land-owner to erect and fit up a station on certain lands which they had bought from him; but the agreement contained no further description of the station, nor any stipulation as to the use of it. The company refused to erect the station in the specified place, but substituted one at a distance of two miles therefrom. This substituted station the landowner refused to accept in lieu of the one to which he was entitled under the agreement. And the Court, upon application for specific performance, while holding that the case was fully within the jurisdiction for specific performance of the agreement, concluded that because of the indefinite character of the agreement, more complete justice could be done by awarding compensation, by way of damages, under the *Stat.* 21 & 22 *Vict.*, known as Lord Cairn's Act, which only applies in cases where the Court has jurisdiction to entertain the application for specific performance.

In the case before us, though the terms of the covenant be very indefinite in many respects, yet it is contended that the subject-matter of the covenant was made entirely certain by the action of the husband in his life-time, by selecting the particular house that he intended for his wife, and which she was willing to accept.  But that house, as before stated, was disposed of in the life-time of the husband; and the proof does not show that he left any other corresponding house that could be awarded to the wife in fulfilment of the contract.   The complainant contends, however, that the covenant constituted a charge upon the estate of the husband, including a house on West Baltimore street, conveyed to Mrs. Reed, and therefore, as Mrs. Reed was a volunteer and took with notice, that house still remains subject to the operation of such charge.    But in this proposition we do not concur.   The conveyance to Mrs. Reed, though not for a valuable consideration, was on good consideration; and unless the house was subject to an existing lien or charge, or the estate of the deceased at the time of his death was insufficient to gratify the requirements of the covenant, the conveyance of the house on West Baltimore street to the daughter could not be disturbed.   The covenant created no specific lien; and it was only in default of providing and setting apart a suitable dwelling-house for the widow, that the estate becomes liable for a sufficient amount either to build or purchase such dwelling-house for her.

Whether the property on North Stricker street, bequeathed to the widow with a view of performing the covenant, be a reasonable performance thereof, would, upon the evidence, appear to be more than doubtful. While there may be no real objection to the location, the evidence shows beyond doubt that the property is of comparatively small value, and is subject to an annual ground-rent of $64.   It is variously valued from $1500 to $3000; but, according to the most reliable evidence, its real value

448 MARYLAND REPORTS.

Busey, Ex'r *vs.* McCurley. McCurley & Stockbridge *vs.* Same.

is about $2000. This, when compared with the value of the property on West Baltimore street, which the husband certainly intended for his wife, makes such a considerable difference, that it is impossible for the Court to say that the bequest to the wife was a just or reasonable performance of the covenant; and if it was not, clearly, the widow was justified in rejecting it. Nothing short of a fair and reasonable performance would gratify the covenant; and it was certainly not within the power of the husband so to dispose of his property by will as to defeat or conclude the rights of the widow under the deed of settlement. *Gregor vs. Kemp,* 3 *Swanst.,* 404, *in note.*

The relief prayed in the bill is in the alternative; either that the complainant may have a dwelling-house suitable to her condition and circumstances in life, to be vested in her absolutely, or a sum of money equivalent to the value of such house. In the present condition of the case, specific execution of the covenant would be attended with no little difficulty; and as there has been no special objection taken to the jurisdiction of the Court to grant relief by way of compensation, that, perhaps, is the most just and equitable mode of administering relief under the peculiar circumstances of this case. It is certainly true, however, that the power to grant relief by way of compensation is not exercised in all cases of bills for specific performance. That power, as a general rule, exists only as ancillary or incidental to the power to grant other relief; and in cases for specific performance, it is only "under special circumstances, and upon peculiar equities, as, for instance, in cases of fraud, or where the party has disabled himself by matters *ex post facto,* from a specific performance, or where there is no adequate remedy at law," that the Court awards pecuniary compensation in lieu of other relief. 2 *Sto. Eq., sec.* 799; *Rider & Trotter vs. Gray, et al.,* 10 *Md.,* 282, 300; *Bowie vs. Stonestreet,*

*et al.*, 6 *Md.*, 419, 431. This case would seem to fall within the reason and scope of the principle upon which compensation may be awarded.

In some cases the question of the amount of compensation is directed to be tried upon an issue of *quantum damnificatus*, and in others by reference to a master; but where the measure of compensation is matter of construction, or where it is dependent upon data plainly apparent to the Court, no such reference is necessary. Here, the inquiry is, what is the fair equivalent in money of such house as the widow is entitled to receive under the covenant? The house designed originally by the husband for his wife is shown to be worth at least $6000; and taking the value of that house as a criterion, furnished by the husband himself, the amount decreed to be paid by the Court below is not more than is reasonable and proper. We shall therefore affirm the decree, with costs.

*Decree affirmed, and*
*cause remanded.*