## ZERINGUE *v.* TEXAS & P. R. CO.

*(Circuit Court, E. D. Louisiana. March 10, 1888.)*

1. SPECIFIC PERFORMANCE—STIPULATIONS OUTSIDE OF CONTRACT.

The owner of some land, expropriated for a railroad sold by notarial act the land to the company, after judgment, for the amount specified in the condemnation, the railroad undertaking as a further consideration to do and not to do certain things for the benefit of the rest of vendor's land. Vendor filed a bill for specific performance and damages on the ground that the railroad had failed to carry out the agreement. The bill also alleged neglect of other considerations assured vendor and not contained in the decree of condemnation or act of sale. *Held,* that the contract between vendor and the railroad was to be found either in the decree or the act of sale, and that all the allegations not so embodied should be eliminated from consideration, and that a motion to suppress evidence in relation to these allegations should be granted.

2. SAME—REQUISITES OF CONTRACT—DEFINITENESS.

In a deed of sale and compromise was the stipulation that the vendee or his assigns "shall build and keep in repair such bridges as may be necessary over the lands herein acquired." *Held,* that this stipulation was too indefinite to be the subject of a bill and decree for specific performance, because there was no sufficiently defined agreement to enforce.[1]

3. SAME—PRACTICE—DAMAGES—DISMISSAL OF BILL.

Where a bill in the federal court for specific performance of stipulations in a contract fails to make out a case for such relief, but only a case for damages for breach of such stipulation, the bill will not be retained in equity to award such damages, but will be dismissed without prejudice to an action at law on the same cause of action.

Bill in equity for specific performance and damages.

On the 19th of March, 1870, Camille Zeringue, by public act, donated to the New Orleans, Mobile & Chattanooga Railroad Company the right of way and passage over and through his plantation lying in Jefferson parish, and said company thereupon entered upon the lands, and constructed thereon the road, etc. On the 3d of May, 1870, the railroad company instituted proceedings to expropriate a certain portion of said plantation, aggregating 192.10 acres. A decree was rendered expropriating said land for the use of the said company, condemning the said company to pay therefor the sum of $45,000, and also to build boundary fences; place boundary posts or stones; to drain said lands for the use and benefit of the remaining lands of Zeringue; to build and keep in repair bridges across the drainage canals; and to maintain a roadway over and through the lands expropriated of a width of 25 feet, free access to and use of same being reserved to said Zeringue, his heirs and assigns. This judgment was reversed by the supreme court and case remanded for a new trial. On the 19th of March, 1872, a second had in the meanwhile died, in order to avoid further litigation, and to decree was rendered in said proceedings expropriating said land, con-

[1] Equity will not specifically enforce a contract wanting in definiteness or mutuality. Bourget v. Monroe, (Mich.) 25 N. W. Rep. 514; Hall v. Loomis, (Mich.) 30 N. W. Rep. 374; Moses v. McClain, (Ala.) 2 South. Rep. 741; Recknagle v. Schmalz, (Iowa,) 33 N. W. Rep. 365; Durkee v. Cota, (Cal.) 16 Pac. Rep. 5; Fogg v. Price, (Mass.) 14 N. E. Rep. 741; Appeal of Holthouse, (Pa.) 12 Atl. Rep. 340; Magee v. McManus, (Cal.) 12 Pac. Rep. 451; Johnston v. Trippe, 33 Fed. Rep. 530; Stembridge v. Stembridge, (Ky.) 7 S. W. Rep. 611; Gallagher v. Gallagher, (W. Va.) 5 S. E. Rep. 297; Angel v. Simpson, (Ala.) 3 South. Rep. 758; Duff v. Hopkins, 33 Fed. Rep. 599.

demning the company to pay therefor the sum of $29,000, and to do and permit certain things. Thereupon the heirs of C. Zeringue, who settle the matter at issue, entered into an agreement with said company evidenced by a notarial act passed May 25, 1872, by which they ceded, transferred, and assigned to said company, on the terms and conditions set forth in said judgment, said land so sought to be expropriated for the consideration of $29,000, and the further consideration that the said company would erect boundary posts or stones at least 100 yards apart on the division or boundary lines of said land expropriated; a boundary fence along the whole of the boundary, from the river-bank to the intersection of the said boundary with the drainage canals on said plantation; and that the said heirs and their assigns should have free ingress and egress, to be forever maintained to and from the said plantation and the Mississippi river, and the usufruct of the said lands, so that the drainage canals on said plantation running from said plantation through the conveyed lands should in no manner be ever obstructed; and a roadway of at least 25 feet along the canals and across said lands so conveyed should be forever reserved; and that said company would build and keep in repair bridges over and across the drainage canals,—all of which is expressly set forth in said act. Further, the said heirs were particularly induced to make said agreement by the statements publicly made by the said company, and specially made to the said heirs by the said company, that the lands sought to be expropriated were designed for and would be used for the terminus of said company, and that the company would immediately erect thereon work-shops, machine-shops, warehouses, storehouses, depots, wharves, etc., necessary for conducting the business of the company at such terminus; which would have the effect of greatly enhancing the value of the remaining lands of said heirs. The value of the lands conveyed at date of conveyance was $60,000. As $29,000 was the amount paid in cash, it follows that the various considerations for which the conveyance was made were estimated to be equal to $31,000. On the execution of the said deed said company entered into possession of said land, and through the said company the Texas & Pacific Railroad Company now hold, and for many years have held, the same, subject to all the obligations originally assumed by and binding on the said New Orleans, Mobile & Chattanooga Railroad Company. These obligations have never been complied with. They have been entirely disregarded; no boundary posts or stones have been erected; an insufficient fence was constructed, but it was destroyed by fire a number of years since; no roadway has been laid out; no bridges built, so as to enable the owners of the plantation to have free ingress and egress; no drains or waterways have been constructed, and, on the contrary, the drains and canals which were on said plantation and extended through said land expropriated to the swamp, have been obstructed; and, as a result of these acts of nonfeasance and malfeasance, great damage has resulted to the owners of the plantation, to the extent of at least $2,000 per annum,—this damage resulting principally from want of drainage. The nature and extent of this damage is shown by

testimony of J. F. Zeringue, Robert Sharp, J. P. Thompson, and M. .J Ferguson. One witness says that the damages caused by the want of drainage is the total ruin of the plantation, and that the damage so caused in a single year amounted to $10,000. Indeed, it is known of all men that a plantation on the lower Mississippi is utterly valueless unless it is properly drained. The defendants introduced as their witness H. W. B. Smith, an engineer in their employ. He says the opening in the road "struck him" as being sufficient to carry off an ordinary rain-fall; that with a drainage machine in the rear of the place powerful enough to draw the water off the swamp side of the place, the water which stood on the river side of the track would flow through the openings under the track, and also go back to the rear. Of course it would, if there were any openings at all,—even a few feet wide and a few inches deep; but all the same the plantation could not be thereby drained so as to be cultivated. The railroad runs through this land expropriated in a general way parallel to the river; the road-bed is raised, there are no culverts at all along the entire line,—some 5,950 feet,—and only one bridge,—No. 1,185,—the ditch which it crosses being about 18 feet wide. There is another bridge,—No. 1,184,—but this is a bridge in the swamp and in the woods; it is not in the cleared plantation at all. The counsel for the defendants asked witness about bridge 1,183. The witness replied that 1,183 was a small bridge about 10 feet long; but he does not say that this opening has any effect whatever in draining the plantation. Mr. Smith has calculated that these openings are sufficient, with the aid of a draining machine, to drain the water resulting from an ordinary rain-fall. His calculations may or may not be theoretically correct, but the positive fact remains that the plantation is not and has not for many years been drained, and in consequence of defective drainage cannot be cultivated. The positive fact remains that the drainage power of the three canals which drained this land at the time the railroad company acquired this land has been diminished at least 50 per cent. These canals are obstructed with pilings, etc., necessary in the construction of railroad bridges, and choked up with dirt and sand, so as to destroy the drainage. (Testimony of Zeringue, Sharp, and Thompson.) Repeated demands were made on the railroad company to comply with its obligations, without effect. As to the loss resulting to the complainants in consequence of the failure of the defendant to make its terminus on the land expropriated, and there construct its depots, store-houses, warehouses, machine-shops, etc., it is difficult to fix the amount accurately. If the agreement had been carried out, it is clear that the value of the plaintiff's lands would have been greatly enhanced. It is shown beyond doubt, by the testimony of Zeringue and Illsley, that this agreement was entered into, and constituted a portion of the consideration for which the said lands were originally conveyed; and it also appears from the petition of the railroad company for the expropriation. The land was worth $60,000 at the date of the original conveyance, and, only $29,000 being paid in cash, it must have been considered that the enhancement would amount to at least $31,000.

*Leonard, Marks & Bruenn,* for plaintiff.
*Howe & Prentiss,* for defendant.

PARDEE, J. The foregoing is the statement of facts as made and claimed by the counsel for plaintiff, and, although incorrect in several points, for the purposes of this present case, and this case only, may be taken as correct in every particular. It is well settled that all representations, declarations, and considerations passing between the parties prior to the reduction of a contract to writing are, in the absence of frauds, merged in the written contract or deed of the parties; and to the written contract alone can we look in order to find what the parties have obligated themselves to do or not to do. The contract, then, in this case is to be found either in the consent judgment and decree entered into and rendered in the Second judicial district court of Jefferson parish, or in the notarial act passed before GUYAL, notary, in pursuance of said judgment, or in both. This eliminates from this case all consideration of that part of the bill relating to representations and considerations that the lands sold and conveyed were to be used as a terminus of the railroad, and the location of shops and warehouses, and a town or city,— all to the enhancement in value of the other lands of the plaintiffs. And the motion to suppress the evidence in relation to this subject should be granted.

An examination of both of the aforesaid contracts shows that the obligations assumed by the New Orleans, Mobile & Chattanooga Railroad Company were as follows: (1) To pay the price; (2) to cause boundary posts or stones to be placed at a distance of 100 yards between the property acquired and the remainder of the Zeringue plantation; (3) to cause to be erected along the boundary line, from the river to the intersection with the draining canal, a division fence; (4) to build and keep in repair such bridges as may be necessary over the lands thus acquired; (5) to pay a proportion of the taxes, and all costs of court. The vendors (present plaintiffs) reserved in favor of the remaining Zeringue plantation certain rights and privileges in the nature of servitudes on the lands conveyed, to-wit, free ingress and egress to the river over the *batture* and wharves of said company; the free use and usufruct of the lands, so that the draining canal running through the said lands should in nowise be obstructed; and a road at least 25 feet wide along the said draining canal. There is no question that the price, taxes, and costs of court were paid as agreed. The contract provides, as to the boundary stones and division fence, nothing as to maintaining them, but that, if the vendee failed to erect the stones or fence within the delay stipulated, then that the vendors were authorized to have the same done at the expense of the vendee, who should be bound to pay the same. The servitude reserved in favor of the Zeringue plantation allowing free ingress and egress to the river front over the *batture* and wharves of the railroad company, has not been denied to the plaintiffs, and there is no complaint on this point. The provision in the deed and compromise judgment reserving a servitude in favor of drainage is, in terms, as follows:

"That the said plantation of the vendors shall have forever the free use and usufruct of the lands thus sold and conveyed to the said company, so that the draining canal of the said vendors running through the said lands shall in nowise be obstructed." By this stipulation the vendee did not undertake or agree to construct nor to keep open any drainage canal, but did agree to permit the vendors, and their successors in the ownership of the Zeringue plantation, to keep open and unobstructed the said drainage canal. Neither the bill nor the evidence shows that this right to open and keep unobstructed the said drainage canal has ever been hindered or denied by the defendants or by their grantors, and the same may be said as to reservation of a road along the canal. It remains, then, that the only stipulation in the said deed and compromise judgment that the vendee or his assigns should perform any act or thing remaining unperformed, is the stipulation that they "shall build and keep in repair such bridges as may be necessary over the lands herein acquired." This stipulation is too indefinite to be the subject of a bill and decree for specific performance, for there is no sufficiently defined agreement to enforce. The bridges to be built and kept in repair, as to size, capacity, construction, and place are all to be determined by necessity, and the necessity of one time may not be the necessity of another. For the text-book law on this subject see Pom. Spec. Perf. §§ 5, 6.

There seems to be no case here for a specific performance, and it seems to be also no case for equitable relief. The learned counsel for plaintiffs, however, contend that although no specific performance can be decreed on the case made, yet the case is one of equitable cognizance, and that the court can and should award full compensation in damages. Counsel rely on 5 Wait, Act. & Def. p. 831, § 3, where it is said:

"It is now well settled that where a court of equity clearly has jurisdiction of the subject of controversy, jurisdiction for compensation or damages will always attach where it is ancillary to the relief prayed for. Thus, when the court has jurisdiction of the case, and it is a case proper for specific performance, it may, as ancillary to specific performance, decree compensation or damages. * * * Compensation is to be awarded when it appears from a view of all the circumstances of the particular case it will subserve the ends of justice."

This authority does not sustain the claim for damages in this cause, because, as I have shown, it is not a case proper for specific performance, and more particularly because this court, as a court of equity, does not have clear jurisdiction. Section 723, Rev. St. U. S. provides that "suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate, and complete remedy may be had at law." Under no head of chancery jurisdiction can a court of the United States sustain a bill in equity to obtain only a decree for the payment of money by way of damages when the like amount can be recovered at law. See *Parkersburg* v. *Brown*, 106 U. S. 500, 1 Sup. Ct. Rep. 442; *Ambler* v. *Choteau*, 107 U. S. 586, 1 Sup. Ct. Rep. 556; *Litchfield* v. *Ballou*, 114 U. S. 190, 5 Sup. Ct. Rep. 820; *Buzard* v. *Houston*, 119 U. S. 352, 7 Sup. Ct. Rep. 249. The complainants' whole case

under the bill and evidence looks to a money decree as the only adequate relief attainable, for it is made up almost entirely of injuries suffered, and damages therefrom. A court of law can, as well as, if not better than, a court of equity, assess any and all damages the plaintiffs are entitled to recover in the premises; and a judgment for damages in money furnishes to the plaintiffs a plain, adequate, and complete remedy.

A decree will be entered dismissing complainants' bill with costs, but without prejudice to the right to proceed at law on the same grounds of action.