# EDWARD L. WARD *vs.* DAVID M. NEWBOLD AND ELIZA N. NEWBOLD, His Wife.

*Specific performance; certainty; ground rents; contracts to build. Equity; prayer for relief; repugnant to bill.*

A contract must be certain in all its parts to merit a decree for its specific performance.                         p. 693

A "ground rent" does not *ex vi termini* mean a rent reserved under a 99-year lease renewable forever.                         p. 694

A contract providing for the creation of a ground rent of a certain amount and rate of captialization, but without specifying the term for which it is to be made, is too indefinite to warrant a decree for specific performance.                         p. 694

Equity will not decree specific performance of a contract to convey property which is not in existence.                         p. 695

A contract requiring the building of a house of a certain width, without specifying its depth, is too indefinite to be specifically enforced.                         p. 696

Generally, equity will not specifically enforce contracts to erect or repair buildings.                         p. 697

Relief in equity which is entirely distinct from and repugnant to the special relief prayed, can not be granted under the prayer for general relief.                         p. 698

Where the relief prayed in a bill in equity was not in the alternative but was first for the specific enforcement of a contract as written, and second for such further and other relief as the case might require, a monetary decree to compensate for the breach of the contract, which was not specifically enforceable, is distinct from and repugnant to the relief prayed in the bill.                         . p. 698

Where in a bill for specific performance, the allegation of irreparable loss and injury are mere conclusions of law, they are not admitted by a demurrer, and can not be taken in proof of damages.                         . p. 698

*Decided June 22nd, 1911.*

Appeal from the Circuit Court of Baltimore City (NILES, J.).

The case was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, URNER and STOCKBRIDGE, JJ.

*S. S. Field* and *Edward L. Ward* (with a brief by *S. S. Field*), for the appellant.

*Joshua Horner, Jr.* (with whom was *David M. Newbold, Jr.*, on the brief), for the 'appellees.

PEARCE, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court of Baltimore City overruling a demurrer to a bill for the specific performance of a contract which is transcribed herein in full, as follows:

"This Agreement, made this 25th day of May, in the year one thousand nine hundred and seven, between David M. Newbold and Eliza A. Newbold, his wife, of Baltimore, Maryland, of the first part, and Edward L. Ward, of the same place, of the second part;

"Witnesseth, That the said parties of the first part do hereby bargain and sell unto the said party of the second part, and the latter doth hereby purchase from the former the following described property, situate and lying in Baltimore City, and being located on the west side of Stevenson street, and beginning about two hundred and seventy-five feet and six inches north of Fort avenue, and running thence north on the west side of Stevenson street sixty-five feet, with a depth of even width of seventy-two feet, more or less, to the centre of an alley 10 feet wide, in fee simple and free and clear and discharged from all claims, liens and encumbrances of every kind, at and for the price of eleven hundred and ninety-one dollars and sixty-six cents, which purchase money is to be paid as follows: In two ground rents of forty-two dollars each to be created, upon lots thirteen feet front on Stevenson street, and with a depth to said ten-foot alley, and forming part of the original lot herein sold to the party of the second part, said lots to be

improved with two-story dwelling houses, containing six rooms each, and it is further agreed that said ground rents so to be conveyed shall be capitalized at six per cent., with the rents beginning November 1st, 1907, and whatever difference there may be between the two ground rents captialized at six per cent. and the purchase money of eleven hundred and ninety-one dollars and sixty-six cents shall be paid in cash by the parties of the first part to the party of the second part, and if said rents shall be created before November 1st, 1907, then the said parties of the first part are to pay the ground rents so conveyed to them to the said party of the second part from the date of such creation to said first day of November, 1907, which would entitle them to collect said rents from the date of creating the same. And it is further agreed between the parties hereto, that no interest shall be paid on said purchase money of eleven hundred and ninety-one dollars and sixty-six cents by said party of the second part from the date of this contract to said first day of November, 1907, and that the two ground rents which the parties of the first part are to take shall be those rents which the parties of the first part are to take (shall be those rents) under the fourth and fifth houses to be erected on said lot. And it is further agreed between the parties hereto that the parties of the first part will at the time of the signing of this contract execute unto the said party of the second part a deed from said lot in fee and free of all liens, claims and encumbrances, which deed shall convey said lot by a good and marketable title, and that said deed shall be held in escrow by David M. Newbold, Junior, and when said houses so to be erected are trimmed out and papered, said deed shall be delivered to the party of the second part, and he shall in turn deliver a deed to said parties of the first part for said two ground rents, they paying unto him the difference between the purchase price for said lot and the said rents capitalized at six per cent. in cash.

"Taxes to be adjusted to date hereof and city and street charges of every kind to be paid or allowed by the parties of the first part. ·

"Witness our hands and seals the day and year first above written.

Eliza A. Newbold.    (Seal)

David M. Newbold.    (Seal)

Witness: G. N. Meisel.

Edward L. Ward.    (Seal)

Witness: Chas. H. Corbett."

The appellant contends in support of his demurrer:

1st. That the contract is uncertain in that it is not stated how rents are to be created or when or for what time the leases shall run, one of its provisions requiring the creation of ground rents; and, because it requires the building of houses, the materials for which, and the character not being specified; nor does the contract specify when the houses are to be built.

2nd. That the contract is unenforceable, because a Court of equity will not supervise the building of houses or a building contract.

3rd. That the contract provides for the creation of ground rents which implies a lessee or lessees, and that an Equity Court can not compel a lessor to make or provide a lessee to sign any lease.

No rule is better established than that which enumerates "certainty in all its parts" as one of the essentials of every agreement to merit the interposition of a Court of equity, and that "if any of these essentials are wanting, Courts of equity will not decree a specific performance." *Griffith* v. *Frederick County Bank,* 6 G. & J. 439; *Gelston* v. *Sigmund,* 27 Md. 343; *Horner* v. *Woodland,* 88 Md. 512.

In *Howard* v. *Carpenter,* 11 Md. 278, the bill prayed that the defendant be commanded to make a lease for 99 years under an agreement or writing which failed to fix the rent to be paid, and the Court said of the paper: "If for no other reason it is defective in not showing what rent was to be paid."

In *Myers* v. *Forbes,* 24 Md. 598, the contract sought to be enforced, provided for a lease of certain lots at a stipulated annual rent, with the privilege to the lessee of buying out the "ground rent" within three years at the rate of six per cent. per annum, but was altogether silent as to the term for which the intended lease was to be made. The Court said: "The insuperable difficulty in granting the relief prayed consists, in our opinion, in the want of definiteness and certainty in the terms of the contract * * * The term or duration of a lease is an essential part of it, and in the absence of any stipulation in that respect a Court of equity can not decree a specific performance of a contract to lease," citing *Howard* v. *Carpenter, supra,* to show that the rent must be definitely fixed, and then adding that "the length of the term is just as necessary a part of the lease as the rate of rent reserved." That case has been approved in *Thompson* v. *Gortner,* 73 Md. 482, and in *Gorter* v. *Gale,* 86 Md. 689.

In the face of the specific decision of the point in *Myers* v. *Forbes, supra,* and the approval of that case, upon that point, so late as 86 Md., we can not adopt the argument of the appellee that the term "ground rent" in this State, *ex vi termini,* means a rent reserved under a lease for ninety-nine years, renewable forever. The contention is not sustained by the case of *Judik* v. *Crane,* 86 Md. 66, cited for that purpose by the appellee, as the ground rent referred to in that case was for ninety-nine years renewable forever. Specific performance was refused in that case because the Court found that the ground rent was not "an old, original, well-secured ground rent for $240," as stated in the advertisement and report of sale of the auctioneer, but was comparatively recent, and was subject to reduction to $140, and was far from being well secured. There is nothing in that opinion to show that if the ground rent had answered the description under which it was sold, but had been for a less period than 99 years renewable forever, the Court would have refused the relief upon the theory or assumption that the term ground rent in this State necessarily imports a rent

reserved upon a lease of ninety-nine years, renewable for-
ever.

Upon this view of the law, "an insuperable difficulty," in
this case, as in *Myers* v. *Forbes, supra,* in granting the relief
prayed, is found in the want of definiteness and certainty
in this essential term of the contract.

In *Popplein* v. *Foley,* 61 Md. 383, where it was sought to
enforce a written contract for a lease, the lease contained no
statement of the term for which it was to be made, but the
bill alleged that it had been agreed the term should be for
99 years, renewable forever, and that this had been omitted
from the contract by mistake or oversight, and the bill prayed
that the contract be so reformed as to correct this mistake, and
be specifically executed as reformed, and it was so ordered.
The Court intimated in the opinion in that case that but for
the decision in *Myers* v. *Forbes,* they should be inclined to
hold that the agreement contemplated leases for ninety-nine
years, renewable forever, but they nevertheless abided by that
decision, and required the mistake to be established by proof,
and the contract to be reformed accordingly *before* granting
its specific performance.

But there are other difficulties in the way of granting the
specific performance of this contract. It provides for the
*future creation* of two certain ground rents to be conveyed
by the appellant to the appellees. No such ground rents
existed when the agreement was made, and none such now
exist. In 26 *Amer. and Eng. Enc.* 39, it is said, a Court
of Chancery will not decree specific performance of an agree-
ment to convey property which has no existence. This state-
ment of the law would scarcely seem to require the support
of adjudged cases, but it was so held in *Kennedy* v. *Hazleton,*
128 U. S. 667, where ample authorities are cited for the state-
ment. Mr. Justice Gray said, "A Court of Chancery cannot
decree specific performance of an agreement to convey prop-
erty which has no existence, or to which the defendant has
no title, * * * and if it appears by the bill, or otherwise,
that the want of title (even if caused by the defendant's own

act, as by his conveyance to a *bona fide* purchaser) was known to the plaintiff at the time of beginning the suit, the bill will not be retained for the assessment of damages, but must be dismissed, and the plaintiff left to his remedy at law". The case stated in the bill in that case, and admitted by the demurrer, was that: "The defendant agreed in writing to assign to the plaintiff any patents he might obtain for improvements in steam boilers. He did invent such improvement, and, with intent to evade his agreement and to defraud the plaintiff, procured a patent for this invention to be obtained upon the application under oath of a third person as the inventor, and to be issued to him as the assignee of that person, and has made profits by manufacturing and selling boilers embodying the improvement so patented. The plaintiff seeks by bill of equity to compel the defendant to assign the patent, and to account for the profits received under it."

So, in *Burton* v. *Shotwell,* 13 Bush. 271, it was held that a contract whereby B agreed to exchange real estate with S for stock in a corporation which had not been organized at the time the suit was brought, could not be specifically enforced. In that case the bill prayed for specific exception of the contract in the alternative, that is, that S be compelled to accept title to the real estate, and pay the agreed sum, $55,500, *either* in the stock of the company *as agreed* in the contract, *or,* in cash, and as the Court found S had purposely defeated the organization of the company, he was decreed to pay the plaintiff the sum of $55,500 in cash *as compensation for the breach of his contract.* Further reference will be made later herein to the granting of this form of relief in the case before us.

The contract in this case also requires the defendant to improve two of the lots to be conveyed to him, by erecting upon each "a two-story dwelling house containing six rooms" * * * to be "trimmed out and papered" before delivery of the deed from the plaintiff to the defendant, and the prayer of the bill is for *this specific relief,* as well as for the creation

of the ground rents before mentioned and their conveyance to the plaintiff.

The *general* rule is certainly well settled that Courts will not specifically enforce contracts to build or repair, although some exceptions have been made to this rule. *Story's Equity Jurisprudence,* section 726; *Fry on Spec. Per,* section 98; *Pomeroy on Spec. Per., 2nd Ed.,* section 23; *36th Cyc.,* page 581. In *Beck* v. *Allison,* 56 N. Y. 366, these exceptions are thus enumerated. "1st. Where the work to be done is defined; 2nd, Where the plaintiff has a substantial interest in its execution which cannot be adequately compensated for by damages, and 3rd, Where the defendant has by the contract obtained for the plaintiff possession of the land upon which the work is to be done."

The record does not bring this case within any of these exceptions.

The work is absolutely undefined except that the houses are to be of two stories, to contain six rooms and are to be trimmed and papered.

It may be assumed, as each lot is only 13 feet front, that the whole front should be occupied by the house, but the lots are 72 feet deep, and how can the Court determine the depth of the houses to be built? Are they to be 40, 50 or 60 feet in depth? This difficulty would seem to be insuperable, even of it could be held, as argued by the appellee, that the building regulations of the City of Baltimore would sufficiently define the material and general structure, since the size of the house must largely govern the cost. A house 60 feet in depth would certainly cost much more than one of the same frontage with a depth of 30 or 40 feet. There is nothing in this contract to show what size or character of houses have been erected in that neighborhood, or indeed whether there are any houses erected in that neighborhood, which might be supposed to furnish a guide to the Court in decreeing as to the character of the houses contemplated by this contract.

In *Busey* v. *McCurley,* 61 Md. 436, the Court said: "In all such cases the agreement must be sufficiently definite to guide the Court in the direction to be given for the specific performance, or, at any rate, that it may be made certain and definite upon proper inquiry."

In that case, the relief prayed was in the alternative; either that the complainant might have a dwelling house suitable to her condition and circumstances in life, to be vested in her absolutely as covenanted by her deceased husband in an ante nuptial settlement, or a sum of money equivalent to the value of such house. There was proof in that case that her husband had built a house designed by him for her under that covenant, and that its fair value was $6,000, but that he had sold and conveyed that house to his daughter in his lifetime. The Court in that case, however, did not decree the erection of a house of that character and description, to cost $6,000, but decreed the payment of that amount to her in lieu of such a house.

The allegation in the bill of irreparable loss and injury is a mere conclusion of law not admitted by the demurrer, and not to be taken as proof that the breach of contract cannot be adequately compensated for by damages. And the defendant has not been let into possession of the land, nor the title transferred, the deed being held in escrow to await the erection of the house and the creation of the ground rents.

In this case the prayer for relief is not in the alternative, as in *Busey* v. *McCurley, supra.* The prayer is first, for exact performance of the contract as written, and, second, for such further and other relief as the case may require.

It is uniformly held that relief which is entirely distinct from and repugnant to the special relief prayer cannot be granted under a general prayer. 16 Enc. *Pl. & Pr.* 806; and this rule has nowhere been better observed than in Maryland. In *Chalmers* v. *Chambers,* 6 H. & J. 30, the Court said, "As to the relief to be given, under a general prayer, the rule is that it must be agreeable to the case made by the bill, and not different from it, or inconsistent with it;" and

that case is approved in *Gibson* v. *McCormick,* 10 G. & J. 108; *Hitch* v. *Davis,* 3 Md. Ch. 275; *Sloan and Atkinson* v. *Safe Deposit and Trust Co.,* 73 Md. 245, and *Riverside Brick Co.* v. *Wheatley,* 92 Md. 412.

In the last case JUDGE BRISCOE said: "It is a well-established rule, and has been repeatedly held by this Court that a party cannot have relief which is contrary to the purpose of his bill and not within its scope", and that where it was clear that the relief sought by the plaintiff was not *specifically* contained in the prayer of the bill, to grant it under the general prayer would not be warranted by the facts alleged and proved in the case, or, as in the case before us, admitted by the demurrer.

Certainly, the relief offered by a personal monetary decree such as the learned judge below would pass if his decree were affirmed, is distinct from and repugnant to the special relief prayed by the bill. One asks the *execution* of the contract as written; the other proposes to substitute for performance of the contract, pecuniary damages for its breach or non-performance, and in our opinion the rule above stated requires the reversal of the decree appealed from, leaving the plaintiff to his remedy at law for breach of contract.

*Decree reversed and bill dismissed, with costs to the appellant above and below.*