## CIRCUIT COURT OF BALTIMORE CITY.

Filed January 28, 1914.

SETH H. LINTHICUM, ET AL.,

VS.

WASHINGTON, BALTIMORE AND ANNAPOLIS RAILROAD.

*S. S. Field* for plaintiffs.

*Marbury, Gosnell & Williams* for defendant.

DUFFY, J.—

The complainants own a tract of land in Anne Arundel county of about sixty acres adjacent to the line of defendant's road. Before the road was constructed, by deed dated 15th March, 1907, complainants conveyed to defendant's predecessor in title about two acres of this land to be used as roadbed.

At this time the Annapolis Short Line ran alongside of complainants' land, and it was intended by defendant to move the tracks of the Short Line further to the east, and then use the land acquired by the deed and a part of the roadbed of the Short Line for its own right of way. This was done, the rights of way of the two roads and the Annapolis road, a public highway, appearing on one of the plats.

In said deed is the following covenant:

"THE PARTY OF THE SECOND PART, for itself, its successors and assigns, covenants and agrees that the parties of the first part, their heirs and assigns, shall have the right to use, for switch purposes in connection with the switch of the Baltimore and Annapolis Short Line Railroad, now the property of the parties of the first part, all that part of the right of way of the party of the second part bounded as follows: On the north by the southernmost private crossing, shown on the plat hereto attached and which leads to the home of the parties of the first part, on the east by the right of way of the Baltimore and Annapolis Short Line Railroad, on the south by the land of the late William A. Shipley, and on the west by a line drawn parallel to and distant thirty-three feet east of the centre line of the right of way of the party of the second part until such time as the party of the second part, its successors or assigns, shall give notice to the said parties of the first part, their successors or assigns, of its desire and intention to terminate and annul the right of the said parties of the first part to said right of use, but the said right to said right of use shall not be annulled or terminated until such time as a new switch similar to said specified switch and in lieu thereof shall have been constructed for the parties of the first part from, and connected with, the Baltimore and Annapolis Short Line, free of cost and expense to the parties of the first part, and at a point satisfactory to the parties of the first part, with all the rights in such new switch as are now vested in, and enjoyed by, said parties of the first part under the provisions of the deed from Sweetser Linthicum and wife to the said Baltimore and Annapolis Short Line Railway. And upon the giving of said notice and the construction of said switch, the rights herein conveyed shall thereupon cease and determine. And the said party of the second part further covenants to slope and grade, within the limits of the land hereby conveyed, all cuts and banks alongside of said right-of-way; to construct and maintain a good five-wire fence along its right-of-way; to immediately construct and maintain three crossings of not less than twenty feet wide on the surface over its right-of-way and over the Baltimore and Annapolis Short Line Railroad at the places indicated on the plat hereto attached, and crossing said right-of-way on the property hereby conveyed, and on the property conveyed by parties of the first part to the Terminal Real Estate Company of Baltimore City by deed of even date herewith, with easy approaches thereto of not more than four per cent. grade and with a roadbed of not less than twenty feet wide in good condition."

Two of the crossings thus provided for were merged into one on Maple road, and it is the opinion of both sides to this cause that if the third crossing is to be located at all, it should be as a continuation of the proposed road on the plat. The grade of this proposed road running west from the railroad will be, when it is constructed, on an average about 8 per cent. Taking into consideration the

topography of the land, the old location of the Short Line, its present location, the location of the defendant's road and the public highway, the language of this covenant is obscure, indefinite and difficult to construe. It is not clear whether or not this crossing is to be located wholly on the land now held by the defendant and the Short Line. If this is what is meant, it is not feasible to so construct it. It does not appear where the termini are to be, or whether it is to be a grade crossing or one under the grade of the railroads. It is not clear whether the easy approaches are to have a grade of not more than 4 per cent., or that the crossing is to have easy approaches and a grade of not more than 4 per cent.

The latter plan seems to have been contemplated by Colonel Wickes, as it so appears on the plat prepared by him. It does not appear whether these approaches are to begin at the present surface of the land or below it or above it at either end of the crossing. Many of the details of construction mentioned by this witness, such as the kind of bridge to be used, the amount, shape and location of the masonry, the length of the wing walls, are not referrable to the terms of the contract. In other words when we undertake to read his testimony into the terms of the contract, it becomes apparent that the covenant is a rough draft to be later filled out with the plans of an engineer. This is accentuated by the testimony of the witnesses as to how this crossing should be constructed and exactly where it should be located. To admit of a decree for specific performance the contract must be certain in all its parts. 115 Md. 692, Ward vs. Newbold. The burden of the testimony of Colonel Wickes, a competent engineer, called by the complainants, is that the construction of this crossing is feasible as an engineering proposition, but undesirable. The testimony satisfies me that no matter how or where it is constructed it will not be for the benefit of the public using the two railroads, the public highway and the crossing and proposed road. The interest of the complainants in this covenant, valuable though it may be, should not be permitted to prevail against the public interest.

We are here dealing with a public service corporation. There is a presumption in its favor that it has so constructed its road as to enable itself to furnish adequate facility and safety to the public. Irrespective of any contract between it and the landowner, by Section 23 of the Public Service Corporation Act, the Public Service Commission has authority to require the company to put a crossing and station at this point when it finds that public need requires it. The property of the complainants was agricultural land at the time the covenant was executed and is so now. It may be, as stated by the witness Anderson, ripe for suburban development, but it is by no means clear that this is correct, for this tract has had two crossings and one station for sometime past, and it still remains agricultural land. But two sales have been made since March 15, 1907. The claim for damage to this tract as a suburban development is perhaps too remote and speculative, but upon this question it is not necessary to pass. These considerations will not quicken the Court to direct a specific performance in the exercise of its judicial discretion, if it appears that there is adequate relief at law for the private wrong. The Whalen case, 108 Md. 22-23, recognizes the right of a Public Service Corporation to do something to increase its facility for serving the public which results in the breach of a contract between the company and a private person, there being adequate relief to such person at law.

The bill contains a prayer for alternative relief by way of damages.

This presupposes a right to specific performance on the allegations of the bill and on the proof offered. But because of the vagueness of the covenant the complainant never, since the execution of the deed of 15th March, 1907, was entitled to claim this form of redress.

I think the criterion in cases where alternative relief is prayed is this: To admit of a decree for compensation claim for specific performance must fail, not because of fundamental defects in the complainants' case, but because for some reason the Court can not or will not grant that form of relief.

In Busey vs. McCurley, 61 Md. 442, relief was prayed in the alternative. It appeared that defendant's testator had conveyed the property before his death so that specific performance was

refused. The contract in this case, though indefinite in its terms, was made certain by the act of the husband in building and living in a house which he intended his wife to have in fulfilment of the contract. But jurisdiction was no doubt sustained to pass a money decree on the theory that when, after the estrangement between the husband and wife, the husband conveyed the house to a third party and attempted to fulfil the covenant by devising to his wife another house, which clearly was not intended by the parties when the contract was executed, was an attempt to perpetrate a fraud upon his wife by acts ex post facto. Furthermore, Judge Alvey stated, "There has been no special objection taken to the jurisdiction of the Court to grant relief by way of compensation." See p. 448. In this state of case compensation in money was decreed to her. In Ward vs. Newbold, 115 Md. 692, the Court held that the contract could not be specifically enforced, because it lacked certainty in all its parts. The bill in this case did not pray for a money decree should specific performance be refused. It was an appeal from an order overruling a demurrer to the bill. It could have been remanded in order that the bill might be amended so as to include a prayer for relief in the alternative, so that a money decree could be passed by the lower Court, if the averments of the bill were sustained by proof, but the Court of Appeals reversed the lower Court and dismissed the bill, leaving the plaintiff to his remedy at law. This must have been done by the learned Court in accordance with the rule as above stated, on the assumption that the plaintiff was bound to know before taking action that his contract was uncertain in its terms and therefore not the subject of specific performance. In other words, being presumed to know when he filed his bill that the primary relief could not be granted, he had no right to the alternative relief in that form. This is the principle which Chancellor Kent applied to these cases. 5 Johnson, Ch. 195, Kemphall vs. Stone. Judge Pearce sustained his views by a citation from 128 U. S. 667, that "if it appears by the bill or otherwise that the want of title (in the defendant) was known to the plaintiff at the time of beginning suit, the bill will not be retained for the assessment of damages, but must be dismissed, and the plaintiff left to his remedy at law."

This same principle was applied in a case where specific performance was refused, because of uncertainty of terms of the contract. See 34 Fed. 243, Zeninger vs. Co.

Pomeroy, in discussing the English Act conferring power on the equity court to award damages, says that the Act does not extend the jurisdiction of equity to any cases or classes of cases which were not previously within the scope of that jurisdiction, and then he adds: "In other words, where the plaintiff fails to establish any covenant, contract or agreement of which a specific performance can be decreed, a court of equity has no power under the statute to grant the relief of damages." Pomeroy, Spec. Perf., Sec. 471: 61 Md. 446. Most of the cases in the books in which damages have been allowed in place of specific performance are those in which by conveyance to a third person the defendant had put it out of his power to comply with a decree to perform.

But there is no substantial difference so far as jurisdiction is concerned, between cases where the Court can not decree specific performance because it is impossible for the defendant to comply with the decree, and cases where the Court will not act because to do so would require that the Court make the contract for the parties. A greater degree of certainty is required for the enforcement of a contract in equity than at law, as Pomeroy points out (Sec. 159). "The jurisdiction of equity in specific performance proceeds on the supposition that the parties have not only agreed as between themselves upon every material matter, but that the matters so agreed on are of such nature, and the subject of enforcement so delineated or indicated either directly or by reference to something else, or so raised to view by legitimate implication, that the Court can and may collect, in their proper relations, all the essential elements, and proceed intelligently and practically in carrying into execution the very things agreed on and standing to be performed." 20 Ill. App. 58, Wallensak vs. Briggs.

Judge Alvey states the principle thus (61 Md. 446): "That a court of equity has jurisdiction upon application for specific performance to decree

the assignment of a particular house * * * to gratify the requirement of the contract sought to be specifically performed would seem to admit of no question or doubt. But in all such cases the agreement must be sufficiently definite to guide the Court in the direction to be given for the specific performance, or at any rate, that it may be made certain and definite upon proper inquiry."

Thus it appears that in considering cases in which specific performance is prayed, the Court keeps in mind that its decree must be precise and definite; nothing must be left uncertain by it. It must not be amplified by plans, specifications, locations and other similar details, to be prepared by an architect or engineer after the decree is passed. It is for this reason that the Court scrutinizes the contract, upon which the decree is to be founded, and refuses to act if it does not find such precision and certainty as must appear in its decree.

A line of cases was cited by the learned counsel for complainant in which specific performance was refused, but a money decree was passed for the amount which had been paid by the complainant to the defendant in execution of the contract. This decree was based on the prayer for general relief. 34 Md. 496, Powell vs. Young. These cases are not germane to the case at bar. In cases like the present one, the bill must contain a specific prayer for relief in damages, if such relief is claimed, as the prayer for general relief will not sustain such claim. 115 Md. 697, Ward vs. Newbold.

The covenant in this case, I think, from a consideration of the context, was intended to run with the land, and should be so interpreted. It is similar to the covenants in Whalen vs. B. & O. R. R., 108 Md. 20, which were held to run with the land.

The complainant has not made out a case for specific performance, nor do the facts bring the case within that class in which a decree for damages will be awarded. The uncertainty of the terms of the contract do not necessarily interfere with a suit at law upon it. Pomeroy, Spec. Perf., Sec. 159.

The bill will, therefore, be dismissed without prejudice to the complainants' right to sue on the covenant at law.