## HACKLEY v. OAKFORD.

(Circuit Court of Appeals, Third Circuit. December 2, 1899.)

No. 22.

**1. SPECIFIC PERFORMANCE—REQUISITES OF ENFORCEABLE CONTRACT.**

There can be no decree for specific performance in the absence of a specific contract, and, until all essential points have been mutually and finally assented to, there is no such contract.

**2. SAME.**

Plaintiff submitted to the attorney for defendant a written proposition to lease from defendant certain coal lands for mining purposes. The proposal stated the royalties to be paid, but contained the condition, "Lease to contain usual mining privileges, and a reasonable minimum." After consulting with defendant, the attorney wrote plaintiff that she accepted the proposal; further stating that "the acceptance is predicated upon the signing of such a lease as I shall advise and prepare." *Held,* that it was open to either party to refuse to sign the lease so prepared, and that its execution by plaintiff after being advised of the refusal of defendant to sign it did not create a contract which plaintiff could specifically enforce.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

For opinion of circuit court, see 92 Fed. 38.

H. W. Palmer and Richard C. Dale, for appellant.

Samuel B. Price, for appellee.

Before ACHESON and DALLAS, Circuit Judges, and BRADFORD, District Judge.

DALLAS, Circuit Judge. In the absence of a specific contract there cannot be a decree for specific performance. A proposal unaccepted, or an acceptance which departs from the terms of the proposal, does not constitute a contract. Until all essential points have been mutually and finally assented to the negotiations remain open, and no contract arises until the negotiations are closed. These principles were not overlooked by the court below, but we think that, with reference to the facts of this case, they were not rightly applied. Mr. Jessup, an attorney at law, was also the defendant's attorney in fact, under a letter of attorney which conferred upon him very general powers, modified and limited, however, by a provision "that in all matters of importance my said attorney is to consult with me before transacting the same." On the day of its date a letter was written and sent by the plaintiff to Mr. Jessup, as follows:

"Scranton, Pa., Oct. 27th, 1894.

"To Hon. Wm. H. Jessup, Attorney for Frances A. Hackley: I hereby offer to lease from you all the merchantable and minable coal in, under, and upon the Thomas Bell tract of land, in Lackawanna county, Pennsylvania, at the following rents or royalties, viz.: For the first two (2) years, forty-two (42) cents for prepared sizes, one-half (½) of the price of prepared sizes for pea, and one-fourth (¼) of the price of prepared sizes for buckwheat, and one-eighth (⅛) of the price of prepared sizes for bird's-eye and culm, if sold and removed from the demised premises. After two years from date of leases, the royalty on prepared coal to increase at the rate of one (1) cent per annum up to a maximum of fifty (50) cents, and the smaller sizes proportionately. Lease to contain usual mining privileges, and a reasonable minimum.

"J. W. Oakford."

This letter embodies the offer in which the contract asserted by the plaintiff is alleged by him to have had its inception. It was, November 8, 1894, submitted by Mr. Jessup to the defendant; and, after consultation with her, he wrote upon it, and she signed, the following:

"I accept the above offer, and direct W. H. Jessup to draw up a proper lease for the coal mentioned.                                    Frances A. Hackley.
     "Nov. 8, 1894."

This writing does not appear to have been itself communicated to the plaintiff, but, on the day of its date, Mr. Jessup wrote him as follows:

"Dear Sir: I write to inform you that your proposal to lease the coal on a part of the Thomas Bell tract, owned by Mrs. Hackley, is accepted by her, and I am directed to prepare a proper lease for the same. The acceptance is predicated upon the signing of such a lease as I shall advise and prepare.
     "Very truly yours,                                    W. H. Jessup,
                                    "Attorney for Mrs. F. A. Hackley."

To this letter of November 8, 1894, the plaintiff made no reply, either written or oral; and that at this point no complete meeting of the minds of the parties had taken place seems to us to be perfectly clear. The proposal, though it contemplated a formal lease, was, save as to rents or royalties, absolutely silent respecting the contents of that instrument, excepting only that the proposer stipulated that it should "contain usual mining privileges, and a reasonable minimum." But no method was indicated for ascertainment of what would be "usual" in the one particular, or "reasonable" in the other; and, beyond the specification of the rates of royalties, no suggestion whatever was made concerning any other of the provisions to be inserted in the lease. Such being the offer which was accepted, conditioned upon the signing of such a lease as Mr. Jessup should advise and prepare, it must have been quite well understood that if such a lease should not be signed, the transaction, in the absence of further negotiations, would be nugatory.

Mr. Jessup afterwards prepared a quite lengthy and elaborate lease, and on November 22, 1894, sent one copy thereof to the defendant, inclosed with a letter in which he informed her that the plaintiff was going to New York on the same day, and would call upon her, and that he (the plaintiff) had the other copy of the lease with him. In this letter Mr. Jessup told the defendant that both copies should be executed by her, and that she and the plaintiff should each retain one of them. The plaintiff went to New York, accordingly, but, for reasons which we do not regard as material, he did not see her. On November 26, 1894, Mr. Jessup received a letter from the defendant, in which she stated, in substance, that she would not sign the lease; and on the same day the plaintiff executed the copy of it which had been given to him, and gave it to Mr. Jessup, with a letter signed by the plaintiff, and addressed to Mr. Jessup, as attorney for the defendant, from which it plainly appears that he had executed the instrument with knowledge of the defendant's refusal to accept or sign it. In this letter the plaintiff's position was stated in this language:

"My execution of this lease, taken in connection with my proposition for a lease, Mrs. Hackley's acceptance thereof, your notice to me of such acceptance, and, finally, your drawing and submitting of this lease, which I have executed

without change, closes the matter. so far as I am concerned; and I hereby notify you, as attorney for Mrs. Hackley, that I hold her to her agreement, and expect her at once to return to me her copy properly executed and acknowledged, and I notify you further that I shall at once go into possession of the land described."

It is evident from this that, as we have said, the signing of the lease by the plaintiff was done with knowledge of Mrs. Hackley's declination to be bound; and as we have already seen that the plaintiff's offer, and the defendant's qualified acceptance thereof, did not constitute a contract, the only question which remains is as to whether the execution by the plaintiff of the lease drawn by Mr. Jessup effected a complete meeting of the minds of the parties. Before he took it with him to New York, he, of course, knew that the acceptance of his offer had been predicated upon the signing of a lease; and his taking this one to the defendant for the very purpose of procuring her signature to it indicates that he understood that unless it should be signed by her, as well as by himself, Mr. Jessup's qualified acceptance of his proposal would not become absolute. At all events, the plaintiff's offer, and Mr. Jessup's response to it, had left unsettled many important points which the lease definitively dealt with. Consequently the assent of both parties to the terms of that instrument was requisite to the formation of a complete contract, and the plaintiff could not, by alone signing it, in disregard of the defendant's dissent, render it mutually obligatory. Mr. Jessup had not undertaken on behalf of the defendant that she would sign this lease, or any other which he might prepare. By his letter to the plaintiff of November 8, 1894, he expressly limited his own part in the transaction to advising his client and preparing the lease. He was to advise, not to control her. Accordingly he did prepare a lease, which he submitted to her, with his advice respecting it; and, inasmuch as it contained provisions which had not been agreed upon, her rejection of it left the matter as if no offer had ever been made. We have reached the conclusion that no such contract as the defendant has been ordered to specifically perform actually existed; and therefore the decree of the circuit court is reversed, and the cause will be remanded to that court, with directions to enter a decree dismissing the bill, with costs.