Statement of the Case.
NICPIOLLS, J.
About the 15th day of June, 1905, the plaintiffs brought suit in the civil district court against defendant, claiming to be entitled to a judgment against her for $2,000, as a commission for services alleged to have been rendered by them as real estate brokers in the matter of the sale of a piece of real estate belonging to defendant. The suit terminated in that court by a judgment rejecting plaintiffs’ demand. That judgment was appealed from to the Court of Appeal which court (Mr. Justice Dufour dissenting) reversed the judgment appealed from, and condemned defendant to pay plaintiffs $2,-000, with legal interest. This last judgment has been brought up to this court for review.
On the 11th of April, 1905, Mr. Tessier, one of the partners of and acting for the firm of Denis, Danziger & Tessier, engaged in buying and selling real estate, wrote, and the defendant, Mrs. Caroline Tilton, signed, the following paper:
“Mr. C. A. Tessier:
“New Orleans, La.
“I authorize you to sell my property, Canal and University place, for one hundred and twenty-six thousand dollars on terms of $26,-000 or more cash, balance on first mortgage notes, and purchaser pays 1905 taxes. I to pay you $2,000 commission, and purchaser to agree to erect a hotel or apartment houses. Possession Oct. 1, 1905.”
Across the face of this instrument are written the words: “Accepted S. V. Fornaris,” and on the back of the same instrument are the words:
“April 13, 1905.
“Sold to S. V. Fonaris as per written authority. C. A. Tessier.”
Under this indorsement are written the words: Registered in Conveyance Office Book, 201, Folio 436. New Orleans, April 14, 1905. J. V. Guillotte, Register.
The registry of this act was made at For-naris’ instance.
On November 9, 1905, Mr. Fornaris wrote the following letter to the register of conveyances:
“Xou are hereby authorized and requested by me to cancel the inscription of certain instrument of date 11th April, 1905, recorded in Book 201, Folio 436, wherein Mrs. Caroline Tilton offered to sell certain property to me. As the offer was never consummated into a binding contract, I have no further interest in the matter, and accordingly, at the request of Mrs. Tilton, I consent to direct the cancellation of the inscription or the recordation of the instrument.”
The inscription was accordingly canceled. Prior to this, the parties had disagreed as to what their respective rights and obligations were, by reason of and under the instrument so recorded, and no sale was ever executed between them. If Mr. Fornaris acquired any rights under it, he abandoned them. Defendant having denied that she had come under any obligations to the plaintiffs for the part they had taken in this matter, thej instituted the present suit, which terminated in the Court of Appeal by a judgment which reversed the judgment of the district court, rejecting plaintiffs’ demand, and rendered judgment in their fav.or as prayed for.
In his reasons for judgment, the district judge said:
“After the acceptance of this proposition by Mr. Fornaris, Mr. Tessier informed Mrs. Tilton of the sale — that he had sold the property. At *229 once she told him she was very much dissatisfied, that she did not intend the authorization as a sale, and in words conveying the idea that it was her intention that he should secure a purchaser and submit the matter to her. * * * As the court understands the law, if this document — this letter — is an obligation for which a suit could be instituted for a specific performance and the purchaser forced to take the property, why, the broker is entitled to his commission. If it is not such an obligation, as the court understands' the law, he cannot recover. It is clear from the evidence of Mrs. Tilton that her idea was that the broker was to obtain a purchaser, and then they were to enter into the details of a sale after submission to her attorney. She had an idea, as many old ladies have, that she would like to reside upon the property. It is clear she did not understand that she was giving Mr. Tessier right to sell the property out and out. Mr. Tessier’s understanding was exactly the contrary. He thought, under his authority, he had the authority to make the sale. Now it appears that the purchaser, Mr. Fornaris, was at once called on to place in writing, or in the act of sale, a clause binding himself to erect a hotel or an apartment house, and what kind of a house it should be. Mr. Fornaris declined absolutely to do so, and simply stated that he would stand upon the contract, and sign an act of sale, just in the bare words of the letter. Shortly after, Mr. Fornaris became seriously ill, and by consent of all parties the sale was canceled. It is an extremely doubtful case as to whether or not this document is a document by which Mrs. Tilton could have brought a suit in court, and forced Mr. Fornaris to a specific performance. After considering all the evidence, I have come to the conclusion that it is not an Obligation as can be enforced in a court of justice. At any rate, at best there are grave doubts. Those doubts must be resolved in favor of the one who drew up this contract. This letter was written by Mr. Tessier himself. He was a business man and he was dealing with a very old lady. He should have made it plain and clear, and if there is any doubt herein it must be construed against the one who drew the contract.”
The Court of Appeal (referring to Mrs. Tilton) says: “Her own proposition was that the purchaser should agree to erect a hotel or apartment house.” This Fornaris agreed to do, and as the evidence conclusively establishes would have done if the sale to him had been consummated. We are clearly of the opinion that the writing in the instant cause evidences a binding contract of promise and sale; that either party could have judicially enforced its specific performance or sued for damages for its breach, and assuredly that Fornaris had his action against Mrs. Tilton for double the earnest he had given, in the event it was she who receded from the promise ; and that Mrs. Tilton had her action against Fornaris for the forfeiture of the earnest in the event he was the one who receded. Civ. Code art. 240; Capo v. Bugdahl, 117 La. 992, 42 South. 478. The case resolves itself into the question whether the written offer to sell was not susceptible of enforcement simply because it did not stipulate for a time within which the hotel was to be built, nor the sort of a hotel it was to be. It cannot be disputed that the plaintiffs were employed to make the sale; that they found a purchaser able, willing, and ready to buy, who promised and agreed to take the property on the terms set forth in the written authorization of the owner, and that it was from no fault of the plaintiffs, but from an entirely independent cause, to wit: the refusal of the owner to complete the contract in accordance with the terms embraced in the offer to sell, that the contract was not consummated. In such a case the law is well settled that the broker is entitled to his commission.
In support of its judgment the court cited Levistones v. Landreaux, 6 La. Ann. 26; Lestrade v. Perrera, Id., 398; Hornbeck v. Gilmer, 110 La. 507, 34 South. 651; Mechem on Agency, p. 612; Burling v. Gunther, 12 Daly (N. Y.) 6; Gaty v. Foster, 18 Mo. App. 639; Gonzales v. Broad, 57 Cal. 224; McGavock v. Woodlief, 20 How. (U. S.) 221, 15 L. Ed. 884.
Counsel of Denis, Danziger & Tessier in their brief refer the court to 8 Cent. Dig. p. 1313. See “A” and a number of decisions bearing on the subject.
Counsel of Mrs. Tilton refer the court to Pomeroy on Specific Performance; Fry on the same subject; 26 Am. & Eng. Enc. of Law, p. 32, et al.
They deny that the authorization given by their client to Mr. Tessier authorized or empowered him to make a binding sale or a *231 binding promise of sale, and that the instrument with the words “accepted” written thereon evidenced either the one or the other, and they submit to the court whether their position on these points be not correct. They urge that the writing in question was drawn by Mr. Tessier and signed, by Mrs. Tilton at the end of an interview in which the latter informed him that her motive for selling the property was to secure the erection thereon by the purchaser of an apartment house or hotel in which she could live, and that she would not be willing to sell the property except upon that condition.
In their brief they quote the following extract from Mr. Tessier’s testimony:
“Q. Isn’t it a fact that Mrs. Tilton at that time told you that she wanted to have an apartment house or a hotel erected upon the property in which she could live, and that she would not be willing to sell the property except on that condition?
“A. She did.”
They further say that at the time the document was given it was well understood that, before any sale should be made, the terms should be submitted to her, and arranged to her satisfaction, and, as evidence of that fact, they submit the following extract taken from his testimony:
“Q. Wasn’t it understood between you and Mrs. Tilton that this document was simply executed for the purpose of giving you some evidence of authority to negotiate on her behalf with regard to the property, and with the understanding that no written contract should be made with regard to the property except upon its being submitted to her, and by her submitted to her counsel?
“A. It was given to me as an authority to sell the property, and I told her that, when the sale took place, the terms and everything would be arranged satisfactorily to her. That was my understanding.
“Q. That was it — the terms of the sale were to be made satisfactory to her?
“A. Tes, sir.”
They say it will be observed that this authorization leaves entirely unsettled several matters, the settlement of which was essential before the sale could be made, to wit, the times at which the mortgage notes to be given for the credit portion of the price should mature, whether in 1 year or 10, or at any intervening periods; whether the notes were to bear interest at all, and if so, what rate of interest; and, finally, when the hotel or apartment house should be erected, and what kind of a house it should be.
Authority was not given to Mr. Tessier to settle these matters. They were to be submitted to Mrs. Tilton, and settled to her satisfaction. There never was any settlement or agreement made or reached on those matters. Mrs. Tilton was very anxious to carry out the agreement and to effect the sale to Mr. Eornaris, provided she could obtain some definite terms on which the sale should be made, and particularly as to the kind of hotel or apartment house which should be erected. Without some settlement of those matters she was unwilling and declined to proceed. They quote the following from the testimony of Mr. Henderson, one of her attorneys, in reference to a personal interview he had with Mr. Eornaris on that subject.
“A. I told Mm that I was sorry that there was a misunderstanding between him and Mrs. Tilton, in regard to the sale of the property; that it was her wish that an apartment house should be erected, and that all she asked was a reasonable obligation on his part as to when the apartment house would be built, and what character of house it would be. There was the only difference between them.
“Q. And what did he say?
“A. He-said he was unwilling to obligate himself as to when he would start erecting the house, which, of course, was the principal thing to be done.
“Q. What did he say in regard to the sort of apartment house or hotel that he would erect?
“A. He was unwilling to obligate himself to anything.
“Q. In other words, he stood on what he considered the contract at that .time?
“A. Tes, sir.
“Q. And declined to make any further specifications in regard to the sort of apartment house, or when he would build the apartment house?
“A. Tes, sir. * * * In other words, Mrs. Tilton was very anxious indeed to have the hotel erected, and willing to carry out the contract provided the hotel was there. That was the whole thing to her — she wanted to live at that spot.”
*233 Counsel call our attention to the matter of a deposit placed by Mr. Fornaris in the hands of Mr. Tessier, which is referred to in the pleadings of the plaintiffs. On that subject they say:
“Mrs. Tilton had nothing to do with this deposit, and was not even advised of it until several weeks after it had been made. Mr. For-naris testified that he withdrew that deposit when he canceled the inscription which had been made of the document he had signed.”
Counsel deny that a judgment for a specific performance could have been based on the instrument upon which plaintiffs have declared.
They contend that a suit for a specific performance can only be maintained where the terms of the contract are so precise that they cannot be reasonably misunderstood, and the specific performance will not be granted to enforce an agreement, if any of its provisions are so indefinite or ambiguous as to render it uncertain what were the intentions of the parties, and what were the obligations they intended to assume. Minnesota v. Associated Press, 83 Fed. 351, 27 C. C. A. 542.
That there can be no decree for specific performance in the absence of a specific contract, and until all essential points have been mutually and finally asserted to them there is no such contract. Hackley v. Oakford, 98 Fed. 781, 39 C. C. A. 284. That, to warrant a decree for specific performance of a contract, such contract must be clearly and unequivocally approved, and its terms as to subject-matter, consideration, and all other essentials must be specific and unambiguous. Pressed Steel Car Co. v. Hansen, 137 Fed. 403, 71 C. C. A. 207, 2 L. R. A. (N. S.) 1172.
They say that in the case of Zeringue v. T. & P. R. R. Co. (C. C.) 34 Fed. 239 (a Louisiana case), the court held that, in a deed of sale where there was a stipulation that the vendee “shall build and keep in repair such bridges as may be necessary over the lands herein acquired,” the stipulation was too indefinite to be the subject of a bill or decree for specific performance, because there was no sufficiently definite agreement to enforce, and that in Potts v. Whitehead, 20 N. J. Eq. 55, the court held that where offer was to sell for a price named, of which a stated portion was to be paid at execution and the balance on mortgage with interest, failure to designate the time of payment of the amount to be earned by mortgage left a material portion of the contract to be settled by negotiation, and therefore could not be specifically enforced.
The testimony taken on the trial, which is embodied in the brief of Mrs. Tilton’s counsel, was objected to by those of the plaintiff on the ground that the “written authority to sell must speak for itself, and cannot be changed or added to by what was spoken before or afterwards.” The court overruled the objection for the reason “that, if this was a suit between Mrs. Tilton, the vendor, and Mr. Fornaris, the alleged purchaser, the objection would undoubtedly be well taken; but this is a suit, as the court understands it, between the vendor and her agent to sell the property for a commission — that it seems to th'e court that what passed between the two could be stated, if for no other purpose, to explain the document.” That the court, at any rate, preferred to rule that the objection should go to the effect to be given to the testimony, and not as to its admissibility.
Opinion.
We are of tbe opinion that the testimony objected to was properly introduced. The document in question was as to its subject-matter, and on the face of the instrument not complete. It disclosed the fact that various matters had to be the subject of future negotiation and settlement before a binding and closed contract, either of sale or of promise of sale, should be brought about. The document did not cover the whole subject-matter. It was open in respect to matters which she (Mrs. Tilton) had a right to keep open, until everything in respect to them had been *235 finally adjusted satisfactorily to her in the act of sale, whether the agreement as to the erection of the hotel should be considered as part and parcel of the agreement to sell the land, or as a personal collateral agreement or covenant growing out of, and incidental to, the sale of the property itself. Redman v. Murrel, 117 La. 520, 42 South. 49; Davies v. Bierce, 114 La. 674, 38 South. 488.
She could not be compelled to sign an act of sale, couched in the exact language of what is claimed by the plaintiffs as a binding and complete promise of sale or actual sale, and to subsequently bring suit against For-naris to have him comply with the shadowy indefinite obligation referred to in the document of erecting a hotel or an apartment house on the property. What would be the allegations and specifications of her petition in such a suit in order to compel Fornaris to erect a hotel, either as to the time of building a hotel, or as to the character and extent of the building to be built? She could give no date, and make no specifications, for the very simple reason that the minds of the two parties had as yet met on neither point. No amount of evidence could bring about an aggregatio mentium. when in fact none such had ever been reached. The court itself could not create an. agreement when the parties had failed themselves to make one. If the parties had not already come to an agreement on those subjects, there was no power on earth to make them agree thereafter. The right of Mrs. Tilton to have these matters closed before she signed an act of sale, and the necessity for her doing this for her own future protection, do not call for any particular discussion. This would have been clear had this litigation been between Fornaris and Mrs. Tilton. It is still more clear and manifest as between Denis, Dan-ziger & Tessier and Mrs. Tilton. The latter admits that it was his understanding of the situation before and at the time the document declared on by them was signed by her that all the terms of the contemplated sale should be submitted to, and be found satisfactory to, her. That condition of things never arose, and, until it did arise, she was bound to neither Fornaris nor to the plaintiffs.
We think the judgment of the Court of Appeal herein brought up for review is erroneous, and it is hereby set aside and annulled. We think the judgment of the civil district court which was reviewed by that judgment was correct; it hereby is reinstated and affirmed, and plaintiffs’ demand rejected, and their suit dismissed. Plaintiffs to pay costs in both courts.