## Cook *v.* Smith.

[80 South. 777, Division B.]

1. BROKERS. *Commission. Statute of frauds.*
   The statute of frauds, in reference to oral agreements, for the sale of interests in land, does not affect an agent's right to compensation for selling land pursuant to oral instructions.

2. BROKERS. *Commissions. Right to.*
   Where the contract between a broker and his principal specified the terms on which land is to be sold, the broker performs his duty, and is entitled to his commissions when he produces a purchaser, ready, willing and able to buy, on the specified terms, but where the terms are not specified, and the actual sale is to be made by the principal, the duty is not performed until he produces the purchaser to whom the principal sells.

3. SAME.
   Under the facts in this case, as set cut in its opinion, the court held that a broker performed the agreement so as to entitle him to the commissions specified having found a purchaser ready, willing, and able to pay, to whom the owner sold the land.

4. BROKERS. *Authority. Revocation.*
   While the seller of real estate can revoke the power of an agent before such agent performs his agreements, a seller cannot

repudiate such agency, so as to defeat the agent's commission after a purchaser is obtained, who is willing to carry out the contract, and who had obligated himself in writing to do so.

Appeal from the chancery court of Quitman county. Hon. Joe May, Chancellor.

Bill by Dave Smith against Dr. J. V. Cook. From a decree for complainant, defendant appeals.

The facts are fully stated in the opinion of the court.

*F. A. Montgomery,* for appellant.

After the doctor had signed a memorandum of his land made out by Smith, which is made exhibit "A" to the bill, Leeton came in, having gone over there himself to purchase the land, being willing to give fifty-five, or even sixty dollars, for it if necessary; that Leeton himself approached Dr. Cook there in his house in the presence of Smith; that Dr. Cook told him that he had agreed to let Smith sell it to some other parties; that they discussed it themselves then and it was agreed that Smith should take it at fifty-five dollare per acre. This was a verbal agreement, and was revocable at any time by Dr. Cook, so far as Leeton was concerned, and so far as Smith was concerned. See *Kolb* v. *Land Company,* 74 Miss. 567; *Jayne* v. *Drake,* 41 So. 372; *Smith* v. *Cauthen,* 98 Miss. 746; *Sunflower Bank* v. *Pitts,* 108 Miss. 380.

After this conversation, Smith without any authority from Dr. Cook, drew up a written contract, which is made exhibit "B" to his bill, in which he agreed to to sell the land to Leeton. Dr. Cook was willing to sell it (although Smith had no authority to make the contract), provided he got fifty-five dollars per acre for the land. But as Smith demanded five dollars per acre as his commission, he not having made the sale, nor brought the purchaser and seller together, Dr. Cook declined to deliver the deed, in which he was entirely within his

rights, as I submit. No sale was made to F. B. Leeton by or through Smith, or otherwise and Smith did not do anything towards making the sale, and did not bring the buyer and seller together, and was not instrumental in making the sale, therefore he did not earn any commission. In fact, Dr. Cook afterwards offered him one thousand dollars and agree to let the trade go through. But this was simply an offer by Dr. Cook to give him that much unearned commission for what little connection he had had with the matter. See *Johnson* v. *Sutton,* 94 Miss. 544; See also, *Deltar & Pine Land Company* v. *Wallace,* 83 Miss. 656.

This contract between Smith and Cook was unilateral and revocable at the pleasure of Dr. Cook, until performed, and would have been if it had been a written agreement between the parties, signed by Dr. Cook. 74 Miss. 567. See, also, *Jayne* v. *Drake,* 41 So. 372.

Smith's contract with Leeton was without authority. He could not upon his own theory of his conversation with Dr. Cook make a written contract with Leeton, that was binding upon Dr. Cook. *Everman* v. *Herndon,* 71 Miss. 823. Smith did not bring the seller and buyer together. Smith cannot claim commissions because of having performed any service that would entitle him to five dollars commissions, or to any other sum.

He did not bring the buyer and seller together; he did not bring about the sale between the buyer and seller through any effort on his part; so far as the proof shows he went to no expense in connection with the Leeton proposed trade. *Smith* v. *Cauthen,* 98 Miss. 746. See, also, *Sunflower Bank* v. *Pitts,* 108 Miss. 380.

The case of *Long* v. *Griffith,* 113 Miss. 658, is not in point with the case at bar because in that case the sale was consumated. For the same reason the case of *Enochs* v. *Paxton,* 87 Miss. 660, is not in point.

Neither does the evidence bring Smith within the rule of *Taylor* v. *Barbour,* 90 Miss. 888, in which case the supreme court says: "If the sale had actually been

accomplished by Barbour & Company, they would have been ·entitled to their commissions, even though the agreement was unilateral, and could have no binding force until executed by Barbour & Company.''

Several things are perfectly clear, First: That Dr. Cook, appellant, made no enforceable contract with Leeton, nor any enforceable contract with Smith, to sell the place to Leeton. Second: That Smith did not bring the buyer and seller together. Third: That Smith was not even influential in Leeton's deciding to purchase the place, and being willing to pay fifty-five dollars for it. Fourth: That Leeton wanted to buy the place himself, and was willing to pay fifty-five dollars per acre or even more, and it was not through any influence on the part of Smith. Fifth: That the only reason that Dr. Cook did not sell the place to Leeton was not because he and Leeton could not agree upon the terms of sale, but because Smith wanted five dollars an acre on a trade which he did not make. Sixth: That if the trade had been made, the deed signed and delivered to Leeton at fifty-five dollars per acre, Smith could not have recovered from Dr. Cook his commission of five dollars per acre.

Surely, therefore, he cannot recover commissions on a sale that never was made, and I respectfully submit that the case should be reversed and the bill dismissed.

*P. H. Lowerey,* for appellee

. This contract was binding on Leeton and probably personally on Smith, but it did not bind Cook because of the statute of frauds. Cook had the legal right to refuse to convey to Leeton, as he had orally agreed, but this did not deliver him of his obligation to Smith to pay him the commission, which he had agreed to pay, because this was not within the statute of frauds. *Lesley* v. *Rosson,* 39 Miss. 358; *Hancock* v. *Dodge,* 85 Miss. 228, 29 A. E. & L. (Second Ed.), 892.

Where the broker has fully performed his undertaking by procuring a person who is ready, willing and able to purchase his employer's property at the price and upon the terms stipulated for, he is entitled to a commission, and his right is not defeated by the fact that his employer has failed or refused to consummate the transaction by making the purposed sale. 23 A. & E. E. of L. (Second Ed.) 919.

Appellant also contends that this was an unilateral contract and was revocable at any time by Dr. Cook. A number of authorities are cited on this point, none of them probably being more to the point than *Kolb* v. *Bennett,* 74 Miss. 567.

The right of the owner to revoke the contract is limited and it must be revoked before the performance by the Broker. In *Kolb* v. *Bennett, supra,* the court says at the bottom of page 569: "If it had obtained a purchaser, even with the assistance of Kolb, ready and willing to buy, then its rights would have been perfect under contract sustained by an executed consideration."

I admit that Cook had the right to revoke the employment of Smith, and sell the land to another, provided he did so before Smith had performed his part of the contract. As stated above, he might, when Leeton came to him, have said to Smith: "I will deal with Leeton myself" and proceed to do so. In that case Smith would have had no right of action. But he did not have the right to refer Leeton to Smith for Smith to make the trade, and permit the trade to be made in his presence and with his approval by Smith upon terms by which Smith was to have five dollars per acre compensation, and then have Smith to meet the purchaser at Marks and close the deal by getting a binding contract from the purchaser and forfeit of one thousand dollars and then afted Smith had done all of this, and had a purchaser bound and able, willing and anxious

to carry out his contract of purchase, to refuse to perform and revoke the contract, and refuse to pay the broker for his services.

I have not found any authority, and I think it is safe to say that there is no reputable court holding that the owner can employ a broker to sell his land and after the broker has performed all of his duty can then revoke the contract and refuse to pay the broker. His right to revoke must be exercised before the broker had executed the contract on his part.

Seems to me that the very authorities relied upon by appellant sustain the appellee's claim. In the case of *Johnson* v. *Sutton,* 49 So. the court says at page 971: "Where the contract between the broker and his principal specifies the terms on which the land is to be sold, the broker has performed his duty and is entitled to his commission when he produces a purchaser ready and willing and able to buy upon the terms specified."

In *Smith* v. *Cauthen,* 54 So. the court says on page 845: "Where the consideration for an option is the performance of certain acts, until such acts are performed, the promise to convey is not binding upon the promisor and is revocable at his pleasure; but when such acts are performed the consideration arises, and the promise to convey then becomes irrevocable." *Bank* v. *Pitts,* 66 So. 810; *Taylor* v. *Barbour,* 90 Miss. 888.

As pointed out in the beginning of the brief, it is not a question as to whether Leeton could hold Cook to the contract made with Smith or whether Smith had authority to make a contract of sale, which would bind Cook to execute a deed. On these points the statute of frauds intervenes in Cook's favor, but there is no statute of frauds relieving him from payment of Smith's compensation for the services which he rendered to him in selling his land, on the term and at the price fixed by himself.

ETHRIDGE, J., delivered the opinion of the court.

The appellee was complainant below and filed a bill in the chancery court against the appellant, a non-resident, for the recovery of one thousand, nine hundred and seventy dollars, claimed to be due the complainant for services in making a certain sale of lands in Quitman county, Miss. It is alleged in the bill that the appellant entered into a contract with the appellee to sell for the appellant the said lands at fifty dollars per acre, and that the complainant Smith would receive five dollars per acre for his commission in case he should sell the land at fifty-five dollars per acre. The memorandum signed by J. V. Cook reads as follows:

"Dr. J. V. Cook's land in Quitman Co. Miss.

S½ of S½ Sec. 1—28—2 W................. 155 acres
N E ¼ S W ¼ & S E ¼ N W ¼ & N E ¼ N
   W ¼ Sec. 2—28—2 W..................... 117
W ½ N W ¼ & N W ¼ N E ¼ Sec. 12—28—
   2 W..................................... 122
                                           —————
                                            394 A

"50. per acre

"One half cash. bal one year from date and assume $5000.00 now against the land, this 20th day of Nov. 1919.                                [Signed] J. V. COOK."

It appears from the testimony for the appellee, compainant below, that he was at the residence of Dr. Cook in the state of Arkansas for the purpose of procuring the power to sell the lands for certain customers at Jackson, Miss., and that he had agreed to sell the said customers the said lands at fifty-five dollars per acre, and that Dr. Cook agreed to this arrangement and signed the memorandum set out above, and while he and Smith were still together, one Leeton came up and introduced himself to Dr. Cook, and stated that he wanted to buy the lands in question; that Dr. Cook referred Leeton to Mr. Smith, stating that he had just

agreed to let Mr. Smith sell the lands, and that Leeton would have to confer with Smith; that afterwards Smith signed a contract, agreeing to sell and convey the lands to Leeton which contract was signed by both Smith and Leeton. Dr. Cook contends that Smith had come to his place to get an agreement to sell the said lands to his customers in Jackson, Miss., and that he agreed with Smith that, inasmuch as Smith had promised these customers to sell the lands at the price of fifty-five dollars per acre, he would agree to sell the lands for the price to said customers and give Smith five dollars per acre commission on such sale, but that, while they were still at the place in conversation, Leeton came in, introduced himself, and stated that he wanted to buy this property in question, and that he told Leeton that he would sell him the property at fifty-five dollars per acre, and that Leeton said he thought he would take the property at that price, as he wanted to buy it, and that he asked Leeton if he wanted to look at the place again before buying, and that Leeton said that he did. He, Dr. Cook, then said, "Smith knows the place, and will show it to you," and that they left, Smith and Leeton together, and that when the deed was sent to Cook for signature he declined to make conveyance because under his contention Smith was not entitled to any commission, and that he himself had sold the land to Leeton. Smith insisted upon five dollars per acre as commission, and Cook declined to make the deed.

Dr. Cook is supported in his testimony by that of his wife, while Smith is supported in his testimony by Leeton. The chancellor heard all of the evidence, and rendered judgment against Dr. Cook in favor of Smith. It is insisted by the appellant that Smith is not entitled to recover because the memorandum signed by Cook is insufficient to constitute an agreement in writing to sell lands; and, second, because the evidence fails to show that Smith brought the buyer and seller to-

gether; and, third, that Dr. Cook had the right to annul the contract, if one existed, any time before the sale was consummated.

In *Hancock* v. *Dodge*, 85 Miss. 228, 37 So. 711, this court held that the statute of frauds, in reference to oral agreements for the sale of interests in land, does not affect an agent's right to compensate for selling land pursuant to oral instructions. See, also, *Lesley* v. *Rosson*, 39 Miss. 368, 77 Am. Dec. 679.

In *Hopper* v. *McAllum*, 87 Miss. 441, 40 So. 2, this court held that under the statute of frauds it is unnecessary to the validity of the executory contract for the sale of the land by the agent by whom it was signed to have been authorized in writing; that under such agreement, though oral, followed by a written agreement to convey, signed by the agent, was good in equity —citing *Lobdell* v. *Mason*, 71 Miss. 937, 15 So. 44. It would seem from these cases that the complainant's right of recovery would not depend upon the sufficiency of the memorandum contract, but, if he made the sale or procured a buyer ready to take at the named price, that he could recover, though his contract with the principle was merely verbal.

In *Johnson* v. *Sutton*, 94 Miss. 544, 49 So. 970, it is stated that where the contract between a broker and his principal specified the terms on which land is to be sold, the broker performs his duty, and is entitled to his commissions, when he produces a purchaser ready, willing, and able to buy on the specified terms, but that where the terms are not specified and the actual sale is to be made by the principal the duty is not performed until he produces the purchaser to whom the principal sells. If the testimony of Smith and Leeton be true, the terms of the sale were specified at the residence of Dr. Cook, and he procured the signing of an agreement binding upon the purchaser to buy the said lands. The chancellor necessarily is better able to determine the

truth of conflicting statements of witnesses than the appellate court, and his findings, unless manifestly wrong, will not be disturbed on appeal. We think the evidence sufficient to warrant the court in finding for the complainant on such conflict in the testimony as exists.

While a seller of real estate can revoke the power of an agent before such agent performs his agreements, a seller cannot repudiate such agency so as to defeat the agent's commission after a purchaser is obtained who is able and willing to carry out the contract, and who has obligated himself in writing to do so. There was no repudiation of Smith's agency by any notice prior to Leeton's signing the contract to purchase, and Cook only repudiated the transaction because he did not want to pay Smith's commission. We think the judgment of the chancellor should be upheld, and the case is accordingly affirmed.

*Affirmed.*