169 So. 69

**HOGGATT v. JOHN.**

No. 33688.

April 27, 1936.

Rehearing Denied May 25, 1936.

McHenry, Lamkin & Lamkin and Charles Titche, all of Monroe, for appellant.

Fink & Fink, of Monroe, for appellee.

O'NIELL, Chief Justice.

John S. Hoggatt, who is a real estate broker, claims that the defendant, T. John, violated a contract to lease to S. H. Kress

& Co., of New York, certain commercial property in Monroe, La., and thereby deprived Hoggatt of his brokerage commission, amounting to $4,900. He is suing also for $60 for the cost of a survey of the property. He claims that T. John had agreed to pay him $2,400 brokerage commission, and that S. H. Kress & Co., had agreed to pay him $2,400 brokerage commission, and that he earned the commissions when he procured, as a lessee, a responsible party, S. H. Kress & Co. ready, willing and able to contract on the terms proposed by T. John. Hoggatt, therefore, claims that T. John, by arbitrarily refusing to sign the contract of lease which was prepared and submitted by S. H. Kress & Co., in response to T. John's written offer, became liable for both of the brokerage commissions and the cost of surveying the property.

T. John, before answering the petition, pleaded that it did not set forth a cause or right of action. The plea being referred to the merits, T. John, answering the suit, pleaded that the proposal which he had made in writing to Hoggatt, as broker, to lease the property to S. H. Kress & Co., was only a tentative or provisional offer, which was so incomplete in its terms that it could not have become a contract by being accepted unconditionally by S. H. Kress & Co.; that in fact the proposal was not accepted unconditionally by S. H. Kress & Co.; that S. H. Kress & Co. merely submitted an unsigned contract of lease, which S. H. Kress & Co., was willing to sign, and requested T. John to sign it; that he declined to sign the

instrument because it contained some provisions and stipulations which were not contemplated or suggested in the proposal which T. John had made to the broker, and because there were other conditions and stipulations which T. John insisted should be embodied in the contract of lease; and that he and S. H. Kress & Co., never agreed upon the terms or conditions of a lease which both would sign. After hearing the case on its merits, the judge rejected Hoggatt's demand. He has appealed from the decision.

The instrument on which the suit is founded is in the form of a letter addressed to John S. Hoggatt, written by him and signed by T. John, at Hoggatt's residence in Vicksburg, Miss., thus:

"Vicksburg, Miss., June 17, 1934.
"Mr. John S. Hoggatt
"Vicksburg, Miss.
"Dear Sir:

"I hereby bind and obligate myself to lease to S. H. Kress & Co 114–5th Ave New York N. Y. for the consideration of $4800.00 Forty eight hundred Dollars per annum my property in DeSiard Street Monroe La being sixty feet (60) frontage by one hundred fifty (150) deep for a period of Fifty (50) years. Lease to start Jan 1st 1935 and terminate Dec 31st 1985 rental payments to start July 1st 1935. Provided the said Kress & Co pays all taxes and insurance on said property during the term of lease and improves same with a new building.

"I am not liable for any commission or brokerage except that period from Jan 1st 1935 to July 1st 1935 provided you are

able to induce Kress to pay same. Rental to be paid monthly.

"[Signed]    T. John."

The explanation which Hoggatt gives of the last paragraph of this letter is that he had been negotiating, for S. H. Kress & Co., with T. John, for a lease on the property, and that S. H. Kress & Co. required a "building interim of six months" from the date of the lease, in which "to erect a building" on the leased premises; that S. H. Kress & Co., therefore, would ask to be relieved of the payment of rent during the first six months of the term of the lease; and that if he (Hoggatt) could induce S. H. Kress & Co. to pay rent during the so-called "building interim of six months," T. John would give the six months' rent, $2,400, to Hoggatt, as a commission. It was not improper or unethical for Hoggatt to accept a commission from both T. John and S. H. Kress & Co., because each of them knew that the other intended to pay a commission to the broker if the transaction was consummated.

As soon as Hoggatt had obtained T. John's written offer, Hoggatt notified C. D. Stevens, who was employed by S. H. Kress & Co. as "head of the real estate division," and who had been negotiating with Hoggatt to obtain a lease on some suitable location in Monroe, La. Stevens requested Hoggatt to have a survey of the lot made and sent to him, with an abstract of title. Hoggatt had the survey made, after asking for and obtaining T. John's permission, and sent the survey and the abstract of title to Stevens. It appears that the matter was then turned over by Stevens to the New York attorneys for S. H. Kress & Co., and they prepared a form of lease, which was approved by the executive officers of S. H. Kress & Co., and was forwarded to the attorneys for the company in Monroe, La., to be submitted to T. John for his signature. S. H. Kress & Co. did not sign the proposed lease, or formally or otherwise accept unconditionally the offer which T. John had made in his letter to Hoggatt. When the unsigned document, which S. H. Kress & Co. proposed as a contract of lease, was submitted to T. John by the Monroe attorneys for S. H. Kress & Co., T. John refused to sign it. When his attorney read the document and explained it to him, he found several provisions in it which he had not proposed, and which he objected to. He complained also of omissions of certain provisions which he would not dispense with. The attorney for T. John, therefore, addressed a letter to Hoggatt, stating T. John's objections to the proposed lease. He said that the monthly rent should be represented by rent notes for $400 each, secured by a bond; that the lessee should be obliged to construct a building on the leased premises, at a cost not less than $150,000, and allow T. John any material that might be salvaged from the building already there. The unsigned contract which T. John was requested to sign would have given the tenant the right to tear down the building on the premises, in whole or in part, provided that, if the tenant saw fit to tear down the building on the premises, the building should be replaced by another building of a value at least equal to that of the building then on

the premises. It was declared in the proposed contract that the intention was to vest in the tenant full authority with respect to the character and size of the building or buildings to be maintained or erected on the leased premises at any time during the term of the lease. All of which, of course, was not in line with the proposal which T. John had made in his letter to Hoggatt. Another clause which T. John objected to in the contract which S. H. Kress & Co. proposed was that, if the building on the leased premises should be totally or substantially destroyed by fire during the last fifteen years of the term of the lease, the tenant should have the option either to rebuild the same and continue the tenancy until the expiration of the lease or to pay the landlord the cost of rebuilding or restoring the building and to cancel the lease. T. John proposed to substitute for that clause a clause requiring the tenant to reconstruct the building at a cost not less than $100,000, in case of destruction by fire during the last fifteen years of the term. T. John proposed also a material change in a clause in the proposed lease, with regard to the notice to be given the tenant, and time to be allowed, in case of a default in any of the obligations of the tenant. T. John insisted also that a clause should be inserted in the proposed lease forbidding the tenant to sublet the premises without the written consent of the landlord, and a clause forbidding the tenant to encumber the leasehold without the consent of the landlord; and T. John objected to a clause in the proposed lease forbidding him to lease to any competitor of the tenant any other

property owned by T. John in the city of Monroe.

Hoggatt did not reply to the letter written to him by the attorney for T. John, stating his objections to the proposed lease which was written by the New York attorney for S. H. Kress & Co. Hoggatt, as a witness in the case, on cross-examination, testified that he had replied through the law firm representing S. H. Kress & Co. in Monroe, and that the information contained in the letter was "passed on to Kress & Company." The member of the Monroe law firm who handled the transaction for S. H. Kress & Co., in the matter of endeavoring to persuade T. John to sign the proposed lease, did not know of the letter which T. John's attorney wrote to Hoggatt, or know of the objections which were stated in the letter, to T. John's signing the proposed lease. Stevens, "head of the real estate division" for S. H. Kress & Co., testified, as a witness for Hoggatt, that it was "for some reason unknown to us [meaning S. H. Kress & Co.]" that T. John refused to sign the contract which S. H. Kress & Co. had submitted for his signature. It appears, therefore, that, up to the time of the trial of this case, no one representing S. H. Kress & Co., except Hoggatt, the real estate broker, knew of the objections stated in the letter which the attorney for T. John wrote to Hoggatt, as the reasons why T. John refused to sign the contract which was proposed by S. H. Kress & Co. In that connection, Stevens, the employee of S. H. Kress & Co., testifying for Hoggatt, said:

"While the S. H. Kress & Company was proceeding in good faith, and ready, willing and able to carry out each and every detail connected with the transaction, and relying on representations made through and by the correspondence, *for some reason unknown to us, T. John wholly refused and still refuses to comply with the stipulations and conditions of the agreements contained in the lease;* and there has been no change on the part of S. H. Kress & Company, relative to the consummation of this transaction, and the company is now willing, and has been willing at all times, to close this transaction." (The italics are by the court.)

T. John, also, testified that he had not received a reply from the letter which his attorney wrote to Hoggatt, or received any offer from S. H. Kress & Co., to consider the objections which were stated in the letter, to T. John's signing the contract which was tendered by S. H. Kress & Co. Surely, T. John had the right to take part in the drafting of the instrument which was to evidence the final agreement or contract of lease. The letter which he had written to Hoggatt, as real estate broker, offering to lease the property to S. H. Kress & Co., was not intended to be T. John's last word on the subject. The letter itself showed that there were some details which were left open for agreement between S. H. Kress & Co. and T. John— particularly with reference to the building which was to be constructed by S. H. Kress & Co. In fact, the letter was so incomplete and indefinite that an unconditional acceptance on the part of S. H. Kress & Co. would not have converted T. John's proposal into a contract.

When a real estate broker brings to the landowner who has employed the broker a person ready and willing and able to rent or to buy the property, as the case may be, on the terms specified by the landowner, the broker has earned his commission, and he cannot be deprived of it by the landowner's refusal to go on with the deal; but that rule applies only where the terms have been specified by the landowner. The rule is well stated in Cook v. Smith, 119 Miss. 375, 80 So. 777, thus:

"Where a broker produces a purchaser [or tenant] ready, willing, and able to purchase [or rent] land on the specified terms, the broker is entitled to his commission; but where the terms are not specified and the actual sale [or lease] is to be made by the principal, the broker's duty is not performed until he produces a purchaser to whom the principal sells [or leases]."

On the trial of this case, one of the attorneys for Hoggatt, cross-examining T. John as a witness, asked him if he was willing, or ever had been willing, to sign a contract of lease embracing the terms and conditions stated in T. John's original letter to Hoggatt, proposing to lease the property to S. H. Kress & Co.; and T. John, of course, replied that he was never willing to sign a lease containing only such terms or conditions as were stated in his original letter to Hoggatt. T. John said, however, that he was always willing, and was even yet willing, to sign the lease which S. H. Kress & Co. had submitted, if S. H. Kress & Co. would eliminate the

objectionable features, which were enumerated in the letter which T. John's attorney wrote to Hoggatt. It appears that when T. John called at the office of the attorney for S. H. Kress & Co. in Monroe, to read the proposed lease which the attorney had received from S. H. Kress & Co., T. John said, before reading the lease, that he could not make up his mind to sign it. He was reluctant even to have the lease read by his attorney. Hence it is argued that T. John was arbitrary in the demands which he made as conditions precedent to his signing the lease. Considering the lack of terms or conditions in the written proposal which T. John made, and considering that he was within his rights in the demands which he made when the lease was read and explained to him by his attorney, we consider T. John's inclination to withdraw from the negotiations before he had read the unsigned lease, which S. H. Kress & Co. had submitted, a matter of no importance. In that respect, the case is, in principle, very much like Denis, Danziger & Tessier v. Mrs. Tilton, 120 La. 226, 45 So. 112. Mrs. Tilton, the landowner, gave the following letter of authority to one of the members of the firm of real estate brokers, viz:

"Mr. C. A. Tessier:

"New Orleans, La.

"I authorize you to sell my property, Canal and University place, for one hundred and twenty-six thousand dollars on terms of $26,000 or more cash, balance on first mortgage notes, and purchaser pays 1905 taxes. I to pay you $2,000 commission, and purchaser to agree to erect a hotel or apartment houses. Possession Oct. 1, 1905."

Tessier submitted the offer to S. V. Fornaris, who wrote and signed an acceptance across the face of the instrument, thus: "Accepted. [Signed] S. V. Fornaris." Tessier then wrote across the back of the document and signed this statement, viz.: "April 13, 1905. Sold to S. V. Fornaris as per written authority. [Signed] C. A. Tessier." Fornaris had the instrument recorded in the conveyance office. Tessier informed Mrs. Tilton that he had sold her property to Fornaris, and she immediately protested, saying that the authority which she had given to Tessier required that any offer to buy the property should be submitted to her. She declined to sell the property to Fornaris, and, on his order, the recorder of conveyances canceled the inscription. Thereafter, the firm of Denis, Danziger & Tessier sued Mrs. Tilton for the brokerage commission. She pleaded that the authority which she had given to Tessier to sell her property was so indefinite, particularly with regard to the kind and cost of the hotel or apartment house to be built by the buyer, that an acceptance of the proposition did not constitute a contract. In sustaining this defense the court said:

"The document in question was as to its subject-matter, and on the face of the instrument not complete. It disclosed the fact that various matters had to be the subject of future negotiation and settlement before a binding and closed contract, either of sale or of promise of sale, should be brought about. * * * It was open in

239

240

respect to matters which she (Mrs. Tilton) had a right to keep open, until everything in respect to them had been finally adjusted satisfactorily to her in the act of sale, whether the agreement as to the erection of the hotel should be considered as part and parcel of the agreement to sell the land, or as a personal collateral agreement or covenant growing out of, and incidental to, the sale of the property itself. * * *

"She could not be compelled to sign an act of sale, couched in the exact language of what is claimed by the plaintiffs as a binding and complete promise of sale or actual sale, and to subsequently bring suit against Fornaris to have him comply with the shadowy indefinite obligation referred to in the document of erecting a hotel or an apartment house on the property. * * * The right of Mrs. Tilton to have these matters closed before she signed an act of sale, and the necessity for her doing this for her own future protection, do not call for any particular discussion. This would have been clear had this litigation been between Fornaris and Mrs. Tilton. It is still more clear and manifest as between Denis, Danziger & Tessier and Mrs. Tilton."

Referring now to Hoggatt's claim of $60 for having a survey made of T. John's lot, it appears that the survey was made at the request of S. H. Kress & Co., and not at T. John's request. All that T. John had to do with the survey was that Hoggatt, when he received from S. H. Kress & Co. the request for a survey, asked and obtained T. John's permission to have the survey made. It does not appear that Hoggatt paid the cost of the survey. On

the contrary, we infer from the testimony of Hoggatt that he had not paid the bill for the survey at the time when the suit was tried. It is probable that S. H. Kress & Co. paid it.

Our conclusion is that the judgment appealed from is correct.

The judgment is affirmed.