REID, Judge.
This is a suit filed by petitioner, Landry & Passman Realty, Inc., against defendants, Harry L. Keen Jr. and his wife to recover a commission in the sum of $2750.00 which petitioner alleges it has earned as a brokerage fee in a real estate transaction. The Lower Court rendered judgment in favor of defendants and dismissed petitioner’s suit. The petitioner has taken an appeal.
The record discloses that the defendants owned certain real estate within the City of Baton Rouge, Louisiana which they wished to sell. They entered into an agreement with petitioner under which petitioner was to act as real estate agent in securing a purchaser for the said property. On June 18, 1962, through the efforts of petitioner, three individuals, namely Eugene McGehee, Drew McKennis, and Eddie McGehee executed an agreement to purchase the property of defendants for the following consideration:
“Assume 1st Mort. $20,620.68; $12,-750.00 cash; 10 yr. lease on 2 Bed Room furnished luxury apt. in 48 unit apartment project which rents for $149.50; 10% interest in Corp. owning 48 unit luxury apt. project. Permanent financing on entire project not to exceed $8,000.00 per unit. This agreement conditioned upon approval of zoning change to allow construction of apartment project of 48 units.”
This offer provided that it would remain binding and irrevocable until June 23, 1962, *777 and that the act of sale was to be passed, within a period of ninety days. The offer was timely accepted by defendants, who agreed to pay the real estate commission in the sum of five (5%) percent. The contract did not specify when the commission was to be paid. By agreement with all parties concerned the following terms were added to the contract:
“ADDITIONAL TERMS
“Subsequent to the completion of the apartment house, seller has the option in lieu of the two bedroom apartment, of using the house (unfurnished) at 362 Ingleside Drive. Utilities to be paid by seller regardless of whether an apartment or the house is used.
“It is understood that the old house at the south of the property is to be demolished by buyer, and seller will not pay any rent to buyer pending its demolition.
“Seller’s ten percent (10%) interest in the corporation to be formed is further defined to mean ten percent (10%) of the capital stock of the corporation, it being understood that subsequent to the original issue, unanimous stockholder consent will be required to increase the capital stock outstanding. All stock will be of a single class, common stock. Total mortgage indebtedness will not exceed $8,000.-00 per apartment at any time even subsequent to original financing. Seller will not sell any of his stock without first offering it to the corporation at the same price as any bona fide offer from a third person.
“Present tenant at 364 Ingleside Drive will be given 60 days notice before being ordered to vacate.”
Subsequently, by Western Union Telegram, the defendant, Harry L. Keen Jr., was notified by petitioner that the purchasers would be ready to pass the sale at the office of McGehee & McKennis, 2921 Plank Road on November 16, 1962. The sale was not consummated, and this suit resulted.
Defendants contend, on the other hand, that the agreement is unenforceable because of the impossibility of enforcement of all of the terms and stipulations of the contract to purchase. In support of their contention, the defendants contend that the 48 unit apartment project was not under construction at the time of the agreement; that the proposed purchasers were unable to furnish defendants with an apartment at that time; that no corporation owning the 48 unit luxury apartment referred to in the agreement was in existence at the time, and furthermore, that a ten (10%) percent interest in the corporation owning the apartment house could not have been transferred to defendants in accordance with the terms of the agreement because the corporation had not yet been formed.
The facts show that the proposed purchasers wanted the title taken in the name of their corporation, Patio Place, Incorporated. This was a corporation formed by Eugene W. McGehee, Eddie G. McGehee, and E. Drew McKennis, on November 14, 1962 for the purpose of taking title to the real estate, and to construct the proposed apartment house upon it. Articles of incorporation show the total number of shares to be issued was 300 shares without par value. The amount of paid in capital with which the corporation was authorized to do business was $1000.00 in cash.
Plaintiffs, contend that in as much as the proposed purchasers testified they were ready, willing and able to go through with the agreement, that they had already organized the corporation and were ready, and willing to give the defendants their personal guarantee that the apartment building would be constructed and grant the defendants a 10 year lease on an apartment, the plaintiff real estate agents were entitled to a commission because it had secured the agreement to purchase and it was acceptable by the defendants. The *778 Lower Court held that this agreement was unenforceable and not subject to specific performance, and with this holding we are in accord.
The agreement calls for a limit of mortgage indebtedness not to exceed $8000.00 per apartment They were to construct a building composed of 48 apartments which would involve approximately $384,000.00. We do not see how this building could be erected by a corporation with only $1000.00 paid in capital and 300 shares at no par value.
There is no evidence in the record, other than the proposed purchasers’ willingness to live up to the contract, that they were in a position to do so. They had formed a corporation but they expected to finance the construction of the building with a loan. There is no showing from whom they were going to borrow the money, or that it would be available, and certainly whoever advanced the money would want a first mortgage on the property. In the event they failed to construct the building the defendants would have been deprived of the value of their apartment plus their 10% of the capital stock of the corporation. Clearly, under these circumstances the defendants could not demand and give specific performance because it was contingent upon too many events. We do not doubt the good faith of the proposed purchasers but we feel that all of the conditions of this agreement should be complied with at the time of the sale in the event such a sale did take place.
Plaintiff cites several cases in its brief in support of their contention that they are entitled to a fee. The principle of law that they rely on is that a real estate agent employed to sell property is entitled to a commission when he has secured a purchaser ready, willing and able to buy on vendor’s terms, and when he finds an acceptable purchaser his obligation has been fulfilled, even though the sale is never consummated because of principal’s fault or inability to furnish title. See Leaman v. Rauschkolb, La.App., 1 So.2d 338. This case holds as follows:
“ * * * We discern, therefore, that it is the view of the Supreme Court that agency contracts of this kind should be interpreted to mean that the vendor hires the real estate agent with the intention of becoming liable for a commission only in the event a sale of the property is consummated; that explicit provisions to the contrary contained in the contract will not be enforced, since, to do so would lead to an absurd consequence and that the vendor is not responsible for a commission in the event the sale is not consummated unless (1) it appears that he, the vendor, was at fault in that he refused to convey the title to the purchaser without cause or (2) unless he is unable to consummate it because his title, at the time he agreed to sell, was not marketable. * * * ”
Plaintiff contends that the vendor was at fault in that he refused to convey title to the purchasers without cause and vendor is therefore liable for their commission.
The law in this case we believe is clearly set out in the case Denis, Danziger & Tessier v. Tilton, 120 La. 226, 45 So. 112:
“The document in question was as to its subject-matter, and on the face of the instrument not complete. It disclosed the fact that various matters had to be the subject of future negotiation and settlement before a binding and closed contract, either of sale or of promise of sale, should be brought about. The document did not cover the whole subject-matter. It was open in respect to matters which she (Mrs. Tilton) had a right to keep open, until everything in respect to them had been finally adjusted satisfactorily to her in the act of sale, whether the agreement as to the erection of the hotel should be considered as part and parcel of the agreement to sell the land, or *779 as a personal collateral agreement or covenant growing out of, and incidental to, the sale of the property itself. Redman v. Murrell, 117 La. [516] 520, 42 South. 49; Davies v. Bierce, 114 La. [663] 674, 3S South. 488.
“She could not be compelled to sign an act of sale, couched in the exact language of what is claimed by the plaintiffs as a binding and complete promise of sale or actual sale, and to subsequently bring suit against For-naris to have him comply with the shadowy indefinite obligation referred to in the document of erecting a hotel or an apartment house on the property. What would be the allegations and specifications of her petition in such a suit in order to compel Fornaris to erect a hotel, either as to the time of building a hotel, or as to the character and extent of the building to be built? She could give no date, and make no specifications, for the very simple reason that the minds of the two parties had as yet met on neither point. No amount of evidence could bring about an aggregatio mentium, when in fact none such had ever been reached. The court itself could not create an agreement when the parties had failed themselves to make one. If the parties had not already come to an agreement on [these] subjects, there was no power on earth to make them agree thereafter. The right of Mrs. Tilton to have these matters closed before she signed an act of sale, and the necessity for her doing this for her own future protection, do not call for any particular discussion. * * * ”
 While our Courts have held that where a real estate agent has secured a purchaser and signed an agreement to purchase, accepted by the seller, he is entitled to a commission, our Courts have steadfastly held that where the offer to purchase property was conditioned upon securing adequate finances or any other condition and the sale was not consummated the realtor was not entitled to a commission. See Monteleone v. Blache, 11 La.App. 99, 120 So. 900; Derbes v. Blache, 10 La.App. 424, 121 So. 366; Boisseau v. Vallon & Jordano, 174 La. 492, 141 So. 38.
These cases hold that such contracts were' not subject to specific performances, not enforceable and under these conditions the; real estate agent was not entitled to a commission.
For the foregoing reasons we are satisfied that the judgment of the Lower Court is correct and it is therefore affirmed.
Affirmed.